**Record No. 13-2393**

_____

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | |
|---|---|
| ÀLEXANDRIA CONSULTING GROUP, LLC | * |
| | * |
| | * |
| Appellant | * |
| | * |
| v. | * |
| | * |
| ALEXANDRIA SURVEYS, LLC | * |
| | * |
| Appellee | * |
| | * |

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA – ALEXANDRIA DIVISION

**BRIEF OF APPELLANT, ALEXANDRIA CONSULTING GROUP LLC**

Robert L. Vaughn,  Jr., Esq.
O'CONNOR & VAUGHN LLC
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
T 703-689-2100
F 703-471-6496

**Counsel for Appellant**

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 1:132393        Caption: Alexandria Consulting Group, LLC v. Alexandria Surveys, LLC

Pursuant to FRAP 26.1 and Local Rule 26.1,

Alexandria Consulting Group, LLC
(name of party/amicus)

who is        Appellant        , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?                             ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent
    corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
    other publicly held entity?                                                ☐ YES ☑ NO
    If yes, identify all such owners:

10/28/2013 SCC

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☑ YES ☐ NO
    If yes, identify any trustee and the members of any creditors' committee:

    Robert O. Tyler, Esq.
    Tyler, Bartl, Ramsdell & Counts, PLC
    300 North Washington Street, Suite 202
    Alexandria, Virginia 22314

Signature: /s/Robert L. Vaughn, Jr.                    Date: ___12/11/2013___

Counsel for: Alexandria Consulting Group, LLC

## CERTIFICATE OF SERVICE
**************************

I certify that on ___4.2.2014___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Richard G. Hall, Esq.                    Steven Ramsdell, Esq.
7369 McWhorter Place, #412               Tyler, Bartl, et al.
Annandale, VA                            300 North Washington Street, #202
                                         Alexandria, VA

/s/ Robert L. Vaughn, Jr.                         ___4.2.2014___
    (signature)                                      (date)

# TABLE OF CONTENTS

DISCLOSURE STATEMENT

TABLE OF AUTHORITIES...................................................... iii - iv

STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION .............................................    1

STATEMENT OF ISSUES PRESENTED ...........................................  1 - 2

STATEMENT OF THE CASE ..................................................  2 - 8

STATEMENT OF FACTS........................................................  8 - 21

SUMMARY OF THE ARGUMENT............................................... 21 - 24

ARGUMENT
APPLICABLE STANDARD OF REVIEW.....................................24 - 50

    1. Alexandria LLC may not contend for the first time on
    appeal that ACG lacked standing to reopen ASI's
    bankruptcy case having failed to raise that contention
    in the Bankruptcy Court. ................................................ 24 - 35

    2. Even if Alexandria LLC could raise the issue of CG's
    standing for the first time on appeal to the District Court,
    as the Bankruptcy Court made its determination on
    CG's Motion for Judgment after the close of Alexandria
    LLC's evidence and before having heard ACG's
    evidence, including its evidence as to standing, this case
    must be remanded to the Bankruptcy Court to determine
    ACG's standing............................................................... 34 - 37

    III. Alexandria LLC may not contend for the first time
    on appeal that the Debtor's phone number, facsimile
    number and web address were executory contracts
    that were deemed abandoned because the Trustee
    failed to timely accept them after the conversion

of ASI's bankruptcy from Chapter 11 to Chapter 7,
having failed to advance that contention in
the Bankruptcy Court.................................................. 37 – 40

IV. Even if Alexandria LLC could raise the issue that
the phone number, facsimile number and web
address were executory Contracts that were deemed
abandoned because the Trustee failed to timely
assume them after the conversion of ASI's
bankruptcy from Chapter 11 to Chapter 7 for the
first time on appeal to the District Court, it is
prohibited from doing so for having taken possession
of the same without leave of the Bankruptcy Court while
ASI was in Chapter 13. As a practical matter,
the Chapter 7Trustee could not have assumed any
such contracts because Alexandria LLC had
already transferred those contracts to itself during
ASI's Chapter 13 proceedings............................................. 40 - 42

V. The phone number, facsimile number and web
address were property of the bankruptcy estate
and thus subject to sale by the Chapter 7 Trustee.
This is an issue of first impression in this Circuit....................... 42 - 48

VI. The Bankruptcy Court was correct in ruling
that the servers were not scheduled by ASI and
thus were not abandoned when the case was closed
and were subject to sale by the Chapter 7 Trustee....................... 48 – 50

CONCLUSION ...................................................................... 50

REQUEST FOR ORAL ARGUMENT........................................... 51

CERTIFICATE OF COMPLIANCE............................................. 52

CERTIFICATE OF SERVICE.................................................... 53

'

# TABLE OF AUTHORITIES

*Darman v. Metropolitan Alarm Corp.*,
528 F. 2d 908 (1st Cir. 1976); ………………………………………… 46

*First Interstate Credit Alliance Inc. v. American Bank of Martin County*,
488 U.S. 993, 109 S.Ct. 557, 102 L.Ed.2d 584 (1988)……………… 25, 37

*Gilbane Bldg. Co.v. Fed. Reserve Bank*,
80 F. 3d 895, 905 (4th Cir.1996)……………………………………… 24

*Hancock v. Renshaw*,
421 B.R. 738, 742-43 (M.D.N.C., 2009)……………………………… 25, 37

'
*In re Air Conditioning, Inc.*,
845 F.2d 293, 299 (11th Cir.), cert. denied…………………………… 25, 37

*In re Connecticut Pizza, Inc.*,
193 B.R. 217 (1996)…………………………………………………… 47

*In re Endicott*
157 B.R.225, 258 (W.D.Va.1993)……………………………………….. 25, 37

*In re Espino*,
806 F.2d 1001, 1002 (11th Cir.1986)………………………………… 25, 32, 37

*In re: Huntley Nyce Company*,
Case No. 09-17414, Eastern District of Virginia …………………….. 48

*In re Paschall*,
408 B.R. 79, 87 (E.D.Va. 2009)……………………………………….. 25, 37

*Levy v. Lexington County, S.C.*,
589 F.3d 708, 716 (4th Cir. 2009)…………………………………… 39, 43

*Matter of Fontainebleau Hotel Corporation*,
508 F. 2d 1056 (5th Cir. 1975)………………………………………. 46

*Matter of Kroner*,
953 F.2d 317, 319 (7th Cir. 1992)…………………………………………    25, 37

*Matter of Walter J. Kassuba*,
396 F. Supp. 324 (N. D. Ill. 1975)…………………………………………    47

*Network Solutions, Inc. v. Umbro International Inc.*,
529 S.E. 2d 80 (Va. 2000) ……………………………………    24, 38, 43, 44

*Rothman v. Pacific Tel. & Telegraph Co.*,
453 F. 2d 848 (9th Cir. 1971)…………………………………………….    46

*Southeastern Wholesale Corp. v.*
*Cox Communications Hampton Roads, LLC*,
2013 WL 2147478, No: 2:12-cv-00701 (E.D.Va. May 14, 2013)……..    45

*Slenderella Sys. of Berkeley, Inc. v. Pacific Tel & Telegraph Co.*,
286 F2d 488 (2d Cir. 1961)…………………………………………….    46

*United States ex rel. Drakeford v. Tuomey Healthcare Sys.*,
675 F.3d 394, 406 (4th Cir. 2012)………………………………………..    39, 43

11 U.S.C. §365(d)(1) …………………………………………………    24, 41, 42

11 U.S.C. §541(a). …………………………………………………    44

11 U.S.C. § 544(c)    6

11 U.S.C. § 544(d)    6

Bankruptcy Rule 7052…………………………………………………    35

Bankruptcy Rule 9014…………………………………………………    35

Bankruptcy Rule 2002…………………………………………………    27

Va. Code §8.01-511………………………………………………….    43

## APPELLANT'S BRIEF

COMES NOW the Appellant, Alexandria  Consulting Group, LLC ("ACG") and submits the following Brief in support of its appeal in this matter.

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

This appeal emanates from the Memorandum Opinion and Order entered by the U.S. District Court for the Eastern District, Alexandria Division, on November 7, 2013, APP 713-724, reversing the decision of the Bankruptcy Court.    The Bankruptcy Court by Order entered on April 26, 2013,    APP 701-712, approved the sale of certain assets of the Debtor, Alexandria Surveys International, LLC (hereinafter "ASI"), to ACG, over the objections of Alexandria Surveys, LLC (hereinafter "Alexandria LLC").    Alexandria LLC had appealed the Bankruptcy Court's decision to the District Court   pursuant to 28 U.S.C. §158(a)(1).

On November 15, 2013, ACG timely filed its Notice of Appeal to this Court pursuant to 28 U.S.C. §158(d).

## STATEMENT OF ISSUES PRESENTED

I.   Alexandria LLC may not contend for the first time on appeal to the District Court that ACG lacked standing to reopen ASI's bankruptcy case having failed to raise that contention in the Bankruptcy Court.

II.   Even if Alexandria LLC could raise the issue of ACG's standing for the first time on appeal to the District Court, as the Bankruptcy Court made its determination on ACG's Motion for Judgment after the close of Alexandria LLC's evidence and before having heard ACG's evidence, including its evidence as to standing, this case must be remanded to the Bankruptcy Court to determine ACG's standing.

III. Alexandria LLC may not contend for the first time on appeal that the Debtor's phone number, facsimile number and web address were executory contracts that were deemed abandoned because the Trustee failed to timely accept them after the conversion of ASI's bankruptcy from Chapter 11 to Chapter 7, having failed to advance that contention in the Bankruptcy Court.

IV. Even if Alexandria LLC could raise the issue that the phone number, facsimile number and web address were executory contracts that were deemed abandoned because the Trustee failed to timely assume them after the conversion of ASI's bankruptcy from Chapter 11 to Chapter 7 for the first time on appeal to the District Court, it is prohibited from doing so for having taken possession of the same without leave of the Bankruptcy Court while ASI was in Chapter 13. As a practical matter, the Chapter 7 Trustee could not have assumed any such contracts because Alexandria LLC had already transferred those contracts to itself during ASI's Chapter 13 proceedings.

V. The phone number, facsimile number and web address were property of the bankruptcy estate and thus subject to sale by the Chapter 7 Trustee. This is an issue of first impression in this Circuit.

VI. The Bankruptcy Court was correct in ruling that the servers were not scheduled by ASI and thus were not abandoned when the case was closed and were subject to sale by the Chapter 7 Trustee.

## STATEMENT OF THE CASE

ASI, the Debtor, filed a Chapter 11 proceeding on March 3, 2010. ASI was engaged primarily in the business of doing surveys, in particular, house location surveys. During the course of its almost half century of business, it had accumulated over one million survey files. On March 12, 2010, ASI filed its Schedules, APP 31-50, and Statement of Financial Affairs, inclusive of Schedule B – Personal Property. ASI did not list its phone number, fax number, web address/domain name, nor its survey files on Schedule B. While ASI did list "computers" on Schedule B, it did not list its servers.

ASI continued to operate as a debtor in possession throughout the remainder of 2010 and all of 2011under an Order issued by the Bankruptcy Court conditioning its rights. (Docket No. 16)  ASI never filed a proposed plan of reorganization, nor sought approval of any plan.  On December 5, 2011, the U.S. Trustee filed a Motion to Convert the case to a Chapter 7 or to Dismiss the proceedings. (Docket No. 160)

On January 12, 2012, an Order was entered by the Bankruptcy Court converting the case to Chapter 7. APP 121-124. The Order of Conversion required, *inter alia*, that ASI file a final report and account, as well as a statement of unpaid debts, within 14 days.  ASI did not make the required filings within the 14 days. On February 9, 2012, ASI did file a Schedule of Unpaid Debts, which listed debts incurred through January of 2012, inclusive of a debt owed to Merestone Land Surveying, PLLC for September and October 2012 of $12,450, APP 133-136. Debtor filed its last Report of Debtor in Possession on February 15, 2012. (Docket No. 182)

Pursuant to prior notice, the Meeting of Creditors in the Chapter 7 proceedings was held on March 14, 2012. APP 136-142. Paul Hoofnalge, an owner of the Debtor, and Sharon Hoofnagle, one of the owners of Alexandria LLC, appeared on behalf of the Debtor and provided testimony at that hearing.  (ACG Exhibit No. 31) APP 201-226. Based upon their testimony, on April 18, 2012, the Chapter 7 Trustee, Robert O. Tyler, filed a "no asset" report (Docket No. 188) and the case was closed on May 18, 2012. (Docket No. 189)

'

On November 7, 2012, ACG filed its Motion to Reopen, APP 142-150,  the case for purposes of administering assets which were not scheduled by the Debtor, inclusive of customer lists, survey files, web address, phone number and fax number.  That Motion was noticed for hearing for December 18, 2012.  A copy of both pleadings were served upon Alexandria LLC (Docket No. 190).  The Debtor, ASI, filed its opposition thereto on December 12th with a copy of that opposition also being served upon Alexandria LLC. APP 154-161. After hearing the Motion and the opposition thereto, and discerning that there were assets which had not been administered during the Chapter 7 proceedings, the Motion to Reopen, APP 142-150,  was granted.  An Order reflecting the Court's ruling was entered on December 31, 2012  APP 178-180

Mr. Tyler was reappointed as Trustee on January 16, 2013.  APP 180.  On February 8, 2012, the Trustee conducted an auction of the assets of ASI which had not previously been administered at which ACG and Alexandria LLC were the only bidders.  Both Paul and Sharon Hoofnagle appeared at the auction, and sat at the table along with counsel for Alexandria LLC.  The bidding proceeded in $100 increments, with Alexandria LLC bidding $28,000; ACG was the successful bidder at $28,100.

Thereafter, the Chapter 7 Trustee filed a Notice of Sale, APP 181-186, Supplemental Notice of Sale, and Motion for Order Implementing Sale of Property of the Estate.  Alexandria LLC filed its Objection and supporting Memorandum,

˘4˘

APP 188-201, and a Supplemental Objection, APP 247-249. On page 2 of its Memorandum, in a section describing the procedural history of the matter, Alexandria LLC stated that "perhaps" ACG was without standing to file a motion to reopen. It never mentioned the issue again, either through the presentation of evidence or in argument prior to the appeal to the District Court.

In its initial Objection to the Notice of Sale and supporting Memorandum, APP 188-201, Alexandria LLC made no contention that the phone numbers, web address and web site were not property of the estate. To the contrary, it treated those items as property of the estate, contending that such property had no value and should be deemed abandoned. The first and only time Alexandria LLC took a different tact was March 18th, shortly before the first day of evidentiary hearings on March 26th, when it filed what it denoted as its Supplemental Objection to Notice of Sale, APP 247-249. The sum total of the contention in the Supplemental Objection was in paragraph 2 wherein it was stated that neither the Debtor nor the Trustee had any ownership interest or property rights in the phone numbers and domain name of the Debtor. Alexandria LLC cited no authority for its position in its Supplemental Objection, nor did it file a Memorandum in Support thereof citing any authorities.

ACG filed its Memorandum in Support of the Trustee's Notice of Sale and Supplemental Notice of Sale on March 21, 2013. [Docket No. 232; APP 340(1)-341]

The Bankruptcy Court conduced two days of evidentiary hearings, March 26th and April 18, 2013. At the conclusion of Alexandria LLC's evidence, ACG orally

moved for judgment confirming the sale, which motion, with minor exceptions that are not pertinent herein, after argument of counsel, was granted. An Order reflecting the Bankruptcy Court's ruling was entered on April 27, 2013. In that Order, the Bankruptcy Court found:

(i) that none of the Debtor's survey and title files and related documents had been listed on the Debtor's schedules, APP 31-50, were not technically abandoned under 11 U.S.C. § 544(c), and declined to order otherwise under 11 U.S.C. § 544(d), and thus they remained property of the bankruptcy estate;

(ii) that the Debtor's server, inclusive of the digital files and other information thereon, had not been listed on the Debtor's schedules, APP 31-50, was not technically abandoned under 11 U.S.C. § 544(c), and declined to order otherwise under 11 U.S.C. § 544(d), and thus remained property of the bankruptcy estate;

(iii) that the phone and facsimile numbers as well as the website/web address of the Debtor were a property interest, were not listed on the Debtor's schedules, APP 31-50, were not technically abandoned under 11 U.S.C. § 544(c), and declined to order otherwise under 11 U.S.C. § 544(d), and thus they remained property of the bankruptcy estate;

(iv) approved the sale of the foregoing assets to ACG for the sum of $28,100, and directed Alexandria LLC, which was in actual possession of all of ASI's assets, to turnover those assets to the Trustee, forthwith.

On April 30, Alexandria LLC noted its appeal from the foregoing Order. On August 7, 2013, Alexandria LLC filed its opening Brief (Dist. Ct. Docket No. 4). ACG filed its Brief in opposition to the appeal on August 21, 2013. (Dist. Ct. Docket No. 5) On September 11, 2013, Alexandria LLC filed is Reply Brief. (Dist. Ct. Docket No. 6)

On the same day the appeal was filed, Alexandria LLC also filed a Motion for a Stay of the Bankruptcy Court's Order. (Docket No. 250) ACG filed its opposition (Docket No. 264) On May 10, 2013, after hearing oral argument on the Motion, the Bankruptcy Court denied the request for a stay, with an Order to that effect being entered on May 15, 2013. (Docket No. 269)

The District Court heard oral argument on October 4, 2013. At the conclusion of that argument, the District Court ordered the parties to submit further written argument regarding the distinct between computers and servers. Both parties submitted their additional argument, Alexandria LLC's being Dist. Ct. Docket No. 10 and ACG's argument being Dist. Ct. Docket No. 11.

Thereafter, on November 7, 2013, the District Court issued its Memorandum Opinion and Order. APP 713-724. The District Court reversed the Bankruptcy Court, considering the issue of standing for the first time on appeal, and found that that ACG lacked standing to seek to reopen ASI's bankruptcy proceedings. Even though the foregoing ruling effectively determined the appeal, the District Court went further "in the event the bankruptcy case is validly reopened in the future" and

ruled that the phone number, facsimile number and web address were not property of

the bankruptcy estate. The District Court went one step further and ruled that even

if those items were property of the estate, because they arose from executory

contracts that the Chapter 7 Trustee had failed to assume within the allotted 60 days

of the conversion of the case to a Chapter 7 proceeding, those interests were deemed

abandoned. The District Court also reversed the evidentiary finding of the

Bankruptcy Court and ruled that the "servers" of ASI were included within the

"computers" listed on Schedule B and thus were deemed abandoned when the case

was closed.

This is an appeal is from that Order of the District Court.

## STATEMENT OF FACTS

This matter began with the filing of a Chapter 11 proceeding by ASI, the

Debtor, on March 3, 2010. ASI was formed in the early 60's as a surveying

business doing exclusively house location surveys. The business was acquired in

2001 by Paul Hoofnagle, and although it expanded the scope of its business a bit, its

primary business continued to be house location surveys. In his 2010 Business

Plan, Mr. Hoofnagle emphasized that:

"The firm as it stands today is very secure as it holds a very strong
position in the real estate transaction market. Much of this work relies
on existing files for reference and "re-certification" of previous
surveys. With over 47 years of file collection and performance
records, there are no firms in the area that can match ASI on a broad
scale in this market."

The other party to this litigation is Alexandria LLC. It was formed in early October 2011, which was during the pendency of the Debtor's Chapter 11 proceedings. APP 505 - 707 [Tr. 33:21-24; 93:13-15] The two acknowledged owners of the business were Sharon Hoofnagle, the wife of Paul Hoofnagle, and Michael Flynn. Mr. Flynn acknowledged that neither he nor Mrs. Hoofnagle had put up any money for their purported interest in Alexandria LLC. (APP 114; Tr. 4/18/2013 119:5-7) Mr. Flynn acknowledged that he was involved in the business because the Virginia Department of Professional and Occupational Regulation ("DPOR") requires that a licensed surveyor work full time in a surveying business, and he was the only licensed surveyor working for Alexandria LLC. APP 505-707 [Tr. 92:24-25; 93:1-12; 117:20-25; 118:1] Mr. Flynn also had his own business, Merestone Land Surveying PLLC. Notwithstanding Alexandria LLC's efforts to characterize Mr. Flynn as a stranger to ASI, the evidence showed that Mr. Flynn, as Merestone, was actively doing surveying work for the Debtor in 2011, and at least as late as October 2011, and was listed as a creditor of ASI on its October and November 2011 DIP Reports, and on its final Schedule of Unpaid Debts. APP 133-136.

While the Hoofnagles sought to distance the connection between the Debtor, Alexandria Surveys International, LLC and the "new" entity, Alexandria Surveys, LLC, the facts say otherwise, and more often than not, conflict with Alexandria LLC's pleadings. Specifically, in its Memorandum in Support of its Objection to

the Chapter 7 Trustee's Motion to Approve the sale of the Debtor's assets to ACG, Alexandria LLC maintained that Sharon Hoofnagle's only connection with ASI was that she "worked as the receptionist for the debtor." APP 188-201. In an effort to support this assertion, during the first day of the hearings, counsel for Alexandria LLC asked Mr. Hoofnagle what his wife did for the Debtor, to which Mr. Hoofnagle responded "She kept our books."(APP 345-505 [Tr. 5:22-23]  As that answer was not consistent with their papers, counsel followed up with the question: "And did she do anything else?" to which Mr. Hoofnagle replied: "No. That was it." At that point, counsel asked directly whether she was the receptionist. Finally, Mr. Hoofnagle picked up on the line of questioning and responded "Periodically, yes." APP 345-505 [Tr.5:24-25, 6: 1-3]

By the second day of the hearing on April 18th, Alexandria LLC had changed its position and tactics with regard to Sharon Hoofnagle's connection with the Debtor. It did so because it wanted to introduce evidence to try and support its theory that Alexandria LLC had come into possession of the Debtor's phone numbers and web address/domain name because they purportedly had been abandoned by the Debtor for non-payment. For this, they needed affirmative testimony about the finances of the Debtor, and Sharon Hoofnagle was the only source for that testimony. At this point, in response to direct questioning from her counsel, instead of her function being limited to answering the phones of the Debtor, Mrs. Hoofnagle admitted that she was the office manager and administrator of the

ˇ10ˇ

Debtor, and that she "handled the financial part of the company." She went on to say that the foregoing included producing the invoices, posting payments, making bank deposits, and reviewing the company's bank statements so that she could keep "an eye on the balance in the corporate account." APP 505-707 [Tr. 6:12-25; 7:1-7)]

As further evidence of Sharon Hoofnagle's connection with the Debtor, ACG introduced into evidence Schedules B and I from the individual joint Chapter 7 bankruptcy proceedings of Mr. and Mrs. Hoofnagle filed in the Maryland Bankruptcy Court on May 5, 2010, two months *after* ASI's Chapter 11 filing. Those schedules, as all bankruptcy schedules, are filed under penalty of perjury. In Schedule B, item 13, requesting information about the interest of Mr. and Mrs. Hoofnagle in any incorporated and unincorporated businesses, they identified the Debtor, ASI, and specifically stated that it was jointly owned. On Schedule I, Sharon Hoofnagle was identified as the "CFO" of the Debtor, that is, it's Chief Financial Officer; she also was identified as the only one of the two spouses receiving an income from the business.

The fact that ASI was a joint enterprise of the Hoofnagles is further confirmed by their joint attendance at the Creditor's Meeting on behalf of the Debtor. During that proceeding, it was actually Sharon Hoofnagle who took the lead in responding to the Trustee's questions and in providing information about the Debtor. (ACG Ex. 31) Mrs. Hoofnagle also appeared at the Motion to Reopen heard in December

2012, and sat in front of the bar along with Mr. Hoofnagle and counsel for ASI.

The reverse also is true; there are significant connections between Mr. Hoofnagle and the "new" Alexandria Surveys, LLC. Mr. Hoofnagle occupies an office within Alexandria LLC's space, an office for which he pays no rent. APP 505-707 [Tr. 49:23-25; 50:1-6] Mr. Hoofnagle also testified that he is in that office "every day for eleven or 12 hours." APP 345-505 [Tr. 3/26/2013 35:18-19] Mr. Hoofnagle attended the Chapter 7 Trustee's auction in February 2013 along with Sharon Hoofnagle, sat at the table with Alexandria LLC's counsel, and was present throughout the bidding. He also was present at the time of the inspection of the assets located at Alexandria LLC's offices after the auction.

The interrelationships between the two entities does not end there. When Alexandria LLC "began" operations in 2011, Mrs. Hoofnagle admitted that the "vast majority" of its business was the same clientele as the Debtor. APP 505-707 [Tr. 27:19-21] Mrs. Hoofnagle additionally admitted that at least 75% of the business done by Alexandria LLC today is the same business as was done by the Debtor. APP 505-707 [Tr. 26:21-24; 27:6-7] Furthermore, both Mrs. Hoofnagle and Mr. Flynn admitted that when it began operations, Alexandria LLC used the Debtor's leased space. APP 505-707 [Tr. 49:15-22; 39:1-2; 93:16-19] There is nothing in the record to suggest that the Debtor was compensated in any fashion for Alexandria LLC's use of its space, or its assets.

'

The interconnection between the two entities is the foundation reason this case exits. It is because the Hoofnagles controlled both businesses that Alexandria LLC was able to usurp the Debtor's assets and business while it was in a Chapter 11 proceeding. Specifically, on or about the first of November, 2011, within a month of Alexandria LLC having been formed, Sharon Hoofnagle, on behalf of the Debtor, transferred the Debtor's phone number, fax number and web address to Alexandria LLC. In addition, at the same time, Alexandria LLC took possession of the Debtor's million plus house location survey files. APP 505-707 [Tr. 19:11-17; 37:24-25; 38:1-3)

The position of Alexandria LLC as to how it came to have possession of the foregoing items varied during the proceedings. With regard to the phone numbers and web address, in ASI's Response to ACG's Motion to Reopen, APP 154-161, the Debtor stated that the "telephone and facsimile numbers were given to Alexandria Surveys LLC by Cox Business Services because they were abandoned and became available." Mrs. Hoofnagle attempted to support this statement in her direct testimony, stating that she called Cox in the October 2011 timeframe and told them that the Debtor was out of business and could not pay its bills, and based upon that, was then told the phone numbers were available. APP 505-707 [Tr. 19:18-25; 20:1-8).1

---

1 In a letter from counsel for ASI to counsel for ACG dated December 17, 2012, ASI provided an unsigned affidavit from Sharon Hoofnagle in which she represented that

Despite Mr. Hoofnagle testifying on direct that ASI ceased doing business sometime prior to October 2011, his testimony was belied by the Debtor in Possession Monthly Operating Reports ("DIP Reports") for the months of July through December, 2011. In response to Question 1 of each of those reports inquiring whether the "business is still operating", ASI responded "yes." Those reports were filed by on behalf of ASI in the actual time frame in question, long before the instant proceedings began. APP 50 – 108; 112-121  Those same DIP Reports show that the bill for the Debtor's phone, fax and internet service, the combined phone bill, was being paid timely each month. Furthermore,  on  cross examination, Mrs. Hoofnagle admitted the accuracy of the DIP Reports in her cross examination, testifying that the Debtor's phone bill had been paid and was current through at least October 2011.  She further testified that at the time Alexandria LLC actually took over the phone numbers, the Debtor's bill was current, and at no time other than when the Chapter 11 was initially filed in March 2010, had the phone service ever been turned off or otherwise interrupted.  APP 505-707 [Tr.37:2-25; 38:1-3]  Per Mrs. Hoofnagle's own words, the reason Alexandria LLC wanted to continue to use AGI's phone and fax numbers was because they were a major source of the Debtor's business, and Mrs. Hoofnagle knew it would be a valuable tool in the

---

"when the company was formed" she contacted Cox Business Services and was advised that the phone and facsimile numbers were "available."  The company she is referring to is Alexandria LLC, and the time it was formed was October 2011. As ACG has not yet presented its evidence, this affidavit is not yet in the record.

"new" business.   APP 505-707 [Tr. 26:4-19]

With regard to the survey files and servers, Alexandria LLC initially asserted that it had taken possession of these items when " Several months after the closure of the chapter 7 case on May 18, 2012, the debtor cleaned out its leased space and transferred many of its surveying files and computer equipment to Alexandria [LLC]."    Once again, the evidence did not support this contention; it was simply made up from whole cloth.    As Mrs. Hoofnagle herself admitted on cross examination, what she did in 2011 was to shut down the Debtor and start up Alexandria LLC doing the exact same business with the exact same clients, with the exact same phone number, fax number, web address/domain name, at the exact same address as the Debtor, and using the Debtor's survey files and computers.   APP 505-707 [Tr. 27:22-25; 28:1-25; 29:1-8; 31:22-25; 32:1-7; 36:2-25: 37:1]   Mr. Hoofnagle sought to confirm this position by testifying (inaccurately/incompletely) that ASI ceased doing business in the October/November 2011 time frame.

The second tact that Alexandria LLC attempted was to suggest that the phone and fax numbers, as well as the files of ASI had no value.   In its Memorandum in support of its Objection to the Notice of Sale, Alexandria LLC states that the Chapter 7 trustee in this instance most certainly "ponders [sic] their value in deciding whether to administer them as assets."   Since the Trustee closed the Chapter 7 case without administering these assets it must have been because he determined that they had "no significant value."

˜15˜

'

Yet again, the evidence wholly refuted this contention. To the contrary, it amply demonstrated that the Hoofnagles were actively seeking to conceal from the Chapter 7 Trustee not only that they had formed a "new" entity which had taken possession of these assets months before the Creditor's Meeting and over 6 months before the case was closed, but also attempted to mislead the Trustee as to the value of the items. That effort included Mr. Hoofnagle's testimony that other than an old pickup, the Debtor had no assets "worth anything"; that the survey files had no significant value–no more than a $1,000 because the information in the survey files '
was available online; that the assets of the Debtor were not being used as of the time of the Creditor's Meeting and were being stored at the Hoofnagle's home; and expressly denying that they were back in business with those assets again. (APP 297-341).

During the course of her cross examination in the subject hearing, Mrs. Hoofnagle admitted that at no time was the Trustee informed of the truth, that is, that the survey files and the computers were actually in the possession of Alexandria LLC and were being actively used by it in its business. In addition, it was '
acknowledged that at no time did the Hoofnagles tell the Trustee that the Debtor's phone number, fax number and web address/domain name had been taken by Alexandria LLC in October of 2011 and were actively being used by it in its business. APP505-707 [Tr. 59:17-25; 60:1-18]

ACG's cross examination also established that Mr. Hoofnagle's direct testimony that the files had no value because the information was now available on line was patently untrue. In the course of that cross examination, Mr. Hoofnagle was forced to admit that 99% of the million-plus files that the Debtor had were not on record and therefore would not be available from a courthouse through any online source. APP 345-505 [Tr. 32:4-19] The efforts of the Hoofnagles to contend that the files had no value were further belied by Mr. Hoofnagle's admission that the files in question "...take up quite a bit of space, because they're enormous, and it's very expensive to keep them...." APP 345-505 [Tr. 24:9-12], His testimony established that such cost averaged about $1,000 per month. APP 345-505 [Tr. 25:4-9; 26:7-9; 28:2-7].

It also was established that when Alexandria LLC began using the exact same phone and facsimile number as the Debtor, its web address/domain name, its servers and its files, Alexandria LLC did so without any compensation to the Debtor, and without making any effort to obtain the Bankruptcy's Court's approval to do so. APP 505-707 [Tr. 23:10-25; 24:1-25] As noted above, Mrs. Hoofnagle admitted that she never told the Chapter 7 Trustee that she had formed Alexandria LLC, or that it was using the Debtor's assets. APP 505-707 [Tr. 59:17-25; 60:1-18]

Perhaps most telling was Michael Flynn's acknowledgement that "their" counsel told Alexandria LLC that use of the Debtor's assets, specifically the survey files, could be a problem down the road; as he put it, "Somebody could come after

them." In fact, Mr. Flynn testified that he "kind of expected" that to happen. APP 505-707 [Tr. 128:4-25; 129:1-4]        Further telling of the knowledge of Alexandria LLC that it was likely violating bankruptcy law is the testimony of Mr. Flynn regarding why Mr. Hoofnagle was supposedly not involved in the "new" business. When asked that by his own counsel, he stated: "Yeah, we were advised by our attorney that it wouldn't be good to involve him in the new company…" APP 505-707 [Tr. 108:11-15

The lack of credibility and forthrightness of the Hoofnagles is further shown by the DIP Reports filed on behalf of ASI. Question No. 12 on each report asks:

Has the business…transferred any assets to any business related to the DIP in any way?

In response to each of those questions, including for the months of October, November and December 2011, ASI responded "No." Notwithstanding the foregoing, the evidence clearly showed that all of ASI's remaining assets, inclusive of its phone number, fax number, web address, servers and survey files, had been transferred to Alexandria LLC in the October/November 2011 timeframe. Simply put, as Mrs. Hoofnagle admitted on cross examination, what she literally did in 2011 was to shut down the Debtor and start up Alexandria LLC doing the exact same business with the exact same clients, with the exact same phone number, fax number, web address/domain name, at the exact same location as the Debtor, and using the Debtor's survey files and computers. APP 505-707 [Tr. 4/18/2013

˘18˘

'

27:22-25; 28:1-25; 29:1-8; 31:22-25; 32:1-7; 36:2-25: 37:1] As Mrs. Hoofnagle also testified, the reason for the continued use of the phone numbers was because they were a major source of the Debtor's business, and Mrs. Hoofnagle knew it would be a valuable tool in the "new" business. APP 505-707 [Tr. 26:4-19]

The lack of merit to Alexandria LLC's position that the assets had no value was further evidenced by its actions in February 2013, less than one year after the Creditor's Meeting, when the Trustee auctioned off the very assets in question. At that auction, ACG and Alexandria LLC were the only two bidders. Both Paul and Sharon Hoofnagle attended the auction, and both sat at the table, side by side, when and while the auction was being conducted. APP 505-707 [Tr. 2:3-9, 24-25; 63:1-3] Most telling of all is that at that auction, Alexandria LLC bid $28,000 for these supposedly worthless assets. APP 505-707 [Tr. 63:11-15]    Michael Flynn testified that Alexandria LLC would have bid more than $28,000 if the funds had been available. APP 505-707 [Tr. 140:21-25; 141:1-4]. Mr. Flynn also testified that the phone numbers and web address/domain name were essential to Alexandria LLC's business. APP 505-707 [Tr. 122:18-20]

'

Alexandria LLC presented no evidence on the issues of standing, nor made any argument in the Bankruptcy Court regarding the standing of ACG to seek to reopen the case. The only mention of the concept specifically came in the procedural/factual portion of its Memorandum in Support of its Objection wherein it stated:

"ACG, while not a creditor or a party in interest as defined in the Code, and thus *perhaps without standing*, filed a motion on November 11, 2012 seeking to reopen the case…." APP 188-201(emphasis added)

In paragraph 5 of its actual Objection, Alexandria LLC utilizes similar language to that of Rule 5010; that is, that ACG was not a creditor or equity security holder of the Debtor, or an interested party in this case. However, it never asserted that ACG lacked standing to seek reopening of the case. In addition, in its prayer for relief in its Objection, it requests only that the Bankruptcy Court "deny the trustee's motion/notice to sell the property as described above…." There is no request that the Bankruptcy Court determine that Alexandria LLC lacked standing in seeking to reopen the case. APP 188-201.

Similarly, there is no contention by Alexandria LLC in any of its pleadings in the Bankruptcy Court that the phone and fax numbers and the web address were no longer property of the estate because the Chapter 7 Trustee failed to timely assume the same. No such contention appears in either its initial Objection or its Supplemental Objection. No such contention appears in its Memorandum in Support of its Objection. The first and only time the contention appears is very briefly in Alexandria LLC's closing argument, covering two paragraphs in the transcript. APP 505-707 [Tr. 171:20-25; 172:1-3 Even within that argument, Alexandria LLC's counsel acknowledges that its position with regard to abandonment is inconsistent with its argument regarding whether the numbers and web address are, in fact, property interests .

As the Bankruptcy Court proceedings ended on the oral motion for judgment of ACG, it never presented its evidence, inclusive of any evidence on the issue of standing.   Without in any way conceding that the standing issue should be considered for the first time on appeal, if this Court determines it is proper to do so, ACG would be able to establish standing.

## SUMMARY OF THE ARGUMENT

(1)  It is well settled in this Circuit that courts will not review issues raised for the first time on appeal except under exceptional circumstances. While the District Court correctly recognized that Alexandria LLC was raising the standing argument for the first time on appeal, it was incorrect in its finding that the appeal was the first opportunity to raise the issue.   In this instance, Alexandria LLC had actual notice of the Motion to Reopen, APP 142-150,  having been served with the Motion and Notice for the hearing by ACG, having been served with the Opposition filed by the Debtor, and having actually appeared in the person of Sharon Hoofnagle at the hearing on the Motion itself. In addition, there was ample opportunity after the reopening of the case for Alexandria LLC to pursue the contention that ACG lacked standing, as amply demonstrated by the passing reference to the same in its Memorandum in Opposition to the Trustee's Notice of Sale.   There also were two days of evidentiary hearings where the matter could have been raised.   The reason for the rule is to avoid exactly what Alexandria LLC did; sit in wait for the appeal, and then raise the point without giving the opposing side the opportunity to respond

'

and present its evidence on the issue. There are no exceptional circumstances in this case, quite to the contrary, and thus Alexandria LLC should not be allowed to raise the issue of ACG's standing for the first time on appeal. Had ACG been given the opportunity to address the issue of standing on appeal, it would have demonstrated that it did, in fact, have standing.

(2)    Even if there were some exceptional circumstances that merited considering the issue of standing for the first time on appeal, given that the determination by the Bankruptcy Court was made on a motion for judgment before ' ACG presented its evidence, at a minimum the case should be remanded to the Bankruptcy Court to hear that evidence. There is nothing in the record to support the District Court's statement that it is "undisputed that ACG was not a creditor of the Debtor" as that issue was never litigated in the Bankruptcy Court. To the contrary, given the opportunity to address the issue, ACG would be able to demonstrate that it did, in fact, have standing.

(3)    In addition to the standing issue, Alexandria LLC also sought to raise the issue for the first time on appeal the contention that the Debtor's phone number, ' facsimile number and web address were executory contracts that were deemed abandoned because the Trustee failed to timely assume them after the conversion of ASI's bankruptcy from Chapter 11 to Chapter 7. The District Court's findings in support of this point are plainly and simply wrong; Alexandria LLC was not formed shortly after ASI ceased doing business in October 2010, nor were the phone

numbers and web address acquired by it in October 2012 after the closing the case. As with point No. 1, it is well settled in this Circuit that courts will not review issues raised for the first time on appeal except under exceptional circumstances. There are no exceptional circumstances.

(4) The District Court's determination that the phone numbers and web address were executory contracts that the Trustee failed to assume within 60 days of the conversion of the case on January 27, 2012 is simply wrong. The evidence clearly established that, Alexandria LLC took possession of the numbers and web address in October 2011, while ASI was a Chapter 11 debtor; as such, by its own actions in violating the stay, made possible only by the fact that both the Debtor and Alexandria LLC were controlled by the Hoofnagles, there was nothing for the Trustee to assume as of the date of the conversion of the case.

(5) While this Circuit has not yet opined on whether a phone number, facsimile number and web address are property of the bankruptcy estate and thus subject to sale by the Chapter 7 Trustee, the weight of authority and common sense dictate that they are. The District Court's reliance on the Virginia Supreme Court's decision in *Network Solutions, Inc. v. Umbro International Inc.*, 529 S.E. 2d 80 (Va. 2000) as the basis for its finding is misplaced; if anything, *Umbro* stands for the opposite.

(6) The Bankruptcy Court had sufficient evidence before it to make the factual finding that the servers had not been scheduled by ASI and thus were not

˘23˘

abandoned when the case was closed and were subject to sale by the Chapter 7 Trustee. The District Court's reversal of that factual finding was in error. Moreover, as ACG never had an opportunity to present its evidence on this point, at a minimum, the case should be remanded to the Bankruptcy Court for further proceedings.

## ARGUMENT
## APPLICABLE STANDARD OF REVIEW

ACG's challenge to the District Court's consideration for the first time on appeal of the issues of standing and the applicability of 11 U.S.C. § 365(d)(1) with regard to the phone numbers and web address are questions of law to be reviewed *de novo. Gilbane Bldg. Co.v. Fed. Reserve Bank,* 80 F.3d 895, 905 (4th Cir.1996). The failure of the District Court to remand this case to the Bankruptcy Court after considering the foregoing issues for the first time on appeal so that ACG could present its evidence is a question of law to be reviewed *de novo. Gilbane Bldg. Co., supra.* The issue of whether the phone numbers and web address are property of the estate involves an interpretation of 11 U.S.C. § 365(d)(1) and thus also is reviewed *de novo. Gilbane Bldg. Co., supra.* The Bankruptcy Court's determination that the servers were not listed in the Debtor's schedules, APP 31-50, is a finding of fact, to which a "clearly erroneous" standard applies. *Gilbane Bldg. Co., supra.*

**1. Alexandria LLC may not contend for the first time on appeal that ACG lacked standing to reopen ASI's bankruptcy case having failed to raise that contention in the Bankruptcy Court.**

�”24˜

It is well settled in this Circuit that District courts will not review issues raised for the first time on appeal except under exceptional circumstances. *In re Endicott,* 157 B.R. 255, 258 (W.D.Va.1993); *In re Paschall*, 408 B.R. 79, 87 (E.D.Va. 2009); *See also*, *Hancock v. Renshaw*, 421 B.R. 738, 742-43 (M.D.N.C., 2009), citing to *Paschall*.    Such exceptional circumstances would include, at a minimum, a requirement that the record below be clear on the matter. *Matter of Endicott*, 157 B.R. 255 (W.D. Va., 1993); *Matter of Kroner*, 953 F.2d 317, 319 (7th Cir. 1992); *In re Air Conditioning, Inc*., 845 F.2d 293, 299 (11th Cir.), cert. denied, *First Interstate Credit Alliance Inc. v. American Bank of Martin County*, 488 U.S. 993,  109 S.Ct. 557,  102 L.Ed.2d 584 (1988).  Furthermore, where the record reflects that an issue was presented in a cursory manner and never properly presented to the bankruptcy court, the issue is not preserved for appeal.  *In re Espino*, 806 F.2d 1001, 1002 (11th Cir.1986).

Alexandria LLC did not raise the issue of standing at any time during the proceedings in the Bankruptcy Court. The only mention of the term prior to its appeal to the District Court was the passing reference in the portion of its Memorandum in Support of its Objection to the Trustee's Notice of Sale regarding the procedural/factual history of the matter wherein it stated:

"ACG, while not a creditor or a party in interest as defined in the Code, and thus *perhaps without standing*, filed a motion on November 11, 2012 seeking to reopen the case...." APP 188-201 (emphasis added)

In paragraph 5 of its Objection, Alexandria LLC utilizes similar language to that of Rule 5010; that is, that ACG was not a creditor or equity security holder of the Debtor, nor an interested party in this case. However, it never asserts that ACG lacked standing to seek reopening of the case. In addition, in its prayer for relief in its Objection, it requests only that the Bankruptcy Court "deny the trustee's motion/notice to sell the property as described above...." There is no request that the Bankruptcy Court determine that Alexandria LLC lacked standing in seeking to reopen the case. APP 188-201

The District Court seemingly recognizes the principle that matters such as standing are not to be heard for the first time on appeal, stating on page 5 of its Memorandum Opinion that "ACG is correct that this is the first time the Appellant has fully raised the standing argument." APP. 713-724 However, the District Court apparently was of the view that exceptional circumstances existed, finding that the appeal was the "first true opportunity to raise the argument." *Id*. at 5. However, not only does the District Court's basis for its ruling not constitute "exceptional circumstances," the ruling is not consistent with bankruptcy proceedings, nor with the record in the case.

The District Court initially notes that Alexandria LLC was not a party to the Motion to Reopen. APP 142-150. This finding results from a misunderstanding of the bankruptcy process. A Motion to Reopen is filed by a person or entity in the existing bankruptcy case; it is not an adversary proceeding or separate action in

which specific persons or entities are named as plaintiffs and defendants, i.e., parties

to the case. Thus, there are no "parties" to the Motion in the sense used by the

District Court. This is made clear by the Notice required by Bankruptcy Rule 2002,

the form of which is set forth in Official Form 20A. ACG sent out just such a

Notice when it scheduled the Motion to Reopen, APP 150-154, for hearing. That

Notice, in bold, underlined print states:

### Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

The Notice goes on to provide specific information and notice of the actions any

recipient of the notice must take to protect their interests:

If you do not want the Court to grant the relief sought in the Motion, or if you want the Court to consider your views on the Motion, then five (5) business days prior to the hearing, you or your attorney must:

X    File a written response with the Bankruptcy Court. Unless a written response is filed and served prior to the hearing, the Court may deem any opposition waived, treat the motion as conceded, and issue an order granting the requested relief without further notice or hearing. If you mail your response to the court for filing, you must mail it early enough so the court will receive it within the five (5) day deadline stated above. You must also mail a copy to the persons listed below.

X    Attend the hearing scheduled for **December 18, 2012 at 9:30 a.m.**, United States Bankruptcy Court, 200 S. Washington Street, Alexandria, Virginia. If no timely response has been filed opposing the relief requested, the Court may grant the relief without holding a hearing.

The Motion and the foregoing Notice were served on Alexandria LLC on November 7, 2012, along with all other persons and entities on the Debtor's creditor mailing matrix. Alexandria LLC also was served with the Debtor's opposition to the Motion to Reopen. Alexandria LLC had an abundance of time, well over a month, to file a written response denoting any objection it may have had to the reopening of the case—including that ACG lacked standing to make the request; it chose not to do so.

Moreover, not only did Alexandria LLC have ample, actual notice of the hearing on the Motion to Reopen, it actually appeared at the hearing in the form of Sharon Hoofnagle. She sat in front of the Bar prepared to provide testimony as to how Alexandria LLC had obtained the phone numbers and the web address. Given that the Debtor and Mrs. Hoofnagle herself, despite the overwhelming evidence to the contrary, have contended throughout these proceedings that she had no ownership interest in the Debtor, her appearance at the Motion to Reopen could have been for no purpose other than as a representative of Alexandria LLC.

The District Court's parenthetical reference to Mrs. Hoofnagle being at the hearing and "testifying on behalf of the Debtor" ignores the reality of the situation. Sharon Hoofnagle was there to testify that Alexandria LLC was the rightful owner of the phone numbers and web address because they purportedly had been made available by Cox Business Services due to the Debtor's having failed to pay the phone bill—an assertion that was ultimately shown to be untrue. Her testimony

was for the purpose of benefiting Alexandria LLC's efforts to retain assets that it had wrongfully usurped during the Debtor's Chapter 11 proceedings and for no other purpose—the fact that her testimony might help the Debtor were merely incidental.

The bottom line is that had Alexandria LLC raised the issue of standing at any time before the Motion to Reopen was decided, the Bankruptcy Court would have been in a position to hear the evidence and rule on the matter—including evidence presented by ACG. Worst case scenario, the Trustee could have joined in the Motion to Reopen, and this whole argument would be moot—obviously the Trustee had motivation to seek to have the case reopened because ACG was offering to pay significant dollars that would go to the benefit of the bankruptcy estate, and ultimately its creditors. Because ACG was pursuing the matter, there was no need for the Trustee to so do.

Following the District Court's point of view to its logical conclusion, at any time after a case is reopened, and at least until a bankruptcy court order approving a sale of a debtor's assets is final, absolutely any person or entity can appeal the order to the District Court and make any claim they choose regarding the propriety of the bankruptcy court's order reopening of the case, including the issue of standing. The freedom espoused by the District Court clearly would extend even to those persons or entities who received actual notice of the motion to reopen, as well as to those who appeared at the motion to reopen but chose to remain silent. With all due respect to the District Court, that is an absurd result, and one that is not consistent

with bankruptcy procedure, including Rule 2002, or common sense. Our legal system operates on the principal of notice and opportunity to be heard. The Motion to Reopen, APP 142-150, and the Notice to Reopen afforded Alexandria LLC more than sufficient opportunity to file any objection it had to the reopening of the case, including an objection based upon ACG's lack of standing. More to the point, the Notice specifically and directly informed Alexandria LLC that it was required to take some action if it intended to oppose the reopening of the case. Attendance at the hearing itself afforded Alexandria LLC yet an additional opportunity to oppose the reopening on any ground it sought to advocate, including standing. It chose to do nothing, and that is a decision by which it must be, and is, bound.

The District Court's finding, also on page 5 of its Memorandum Opinion, that the appeal was the "first true opportunity to raise the argument" of standing, simply is not consistent with either the procedural or factual history of this matter. In addition, the ability to contest the reopening of the case, Alexandria LLC had repeated opportunities to make its standing argument at virtually any time it desired after the case was reopened. That is conclusively established by its having actually filed an Objection and a Supplemental Objection to the Trustee's Notice of Sale, and Memorandum in Support of its Objection which, in the latter, it made a cursory reference that ACG "perhaps" lacked standing. It also had ample opportunity to raise it at the evidentiary hearing itself. Both Paul and Sharon Hoofnagle testified at those proceedings on behalf of Alexandria LLC. Among the trial witnesses

identified by Alexandria LLC was Cristian Ortan, the principal of ACG. APP 295-297. Mr. Ortan was present during the entire 2 days of hearings, and available to be called as a witness by Alexandria LLC.

The foregoing, of course, is not to mention the incestuous relationship between the Debtor and Alexandria LLC. Both were entities controlled by the Hoofnagles, and but for that interrelationship, Alexandria LLC could never have obtained the assets in question. The bottom line is that despite months of proceedings, and two days of hearings, at no time was the Bankruptcy Court called upon by Alexandria LLC to rule on whether ACG had standing. Instead, Alexandria LLC laid in wait, apparently being of the belief that it would fare better on the issue in the appellate court.

The District Court's finding that the appeal was the first "true opportunity" for Alexandria LLC to raise the standing argument is further belied by the District Court's own recitation that Alexandria LLC did, in fact, reference the standing issue, at least indirectly, in the underlying proceedings by stating in its Objection to the Trustee's Notice of Sale that "ACG was not a creditor...nor was it an interested party...." (Memorandum Opinion, p. 5) The District Court further found that while Alexandria LLC did not "delve deeply into the standing issue," the foregoing references were sufficient to preserve the issue for appeal. The District Court's decision ignores that the foregoing reference in its Objection, and another obtuse reference in its supporting Memorandum that "perhaps" ACG was without standing,

are the only mention by Alexandria LLC whatsoever of anything to do with the issue of standing. It did not "delve" into the issue at all; it did not raise the contention in its opening, it did not present evidence on the issue, it did not mention it in its closing; nor did it ask that the Bankruptcy Court rule on the issue.

Even if the underlying proceedings are viewed in the light most favorable to Alexandria LLC, it is beyond dispute that the issue of standing was not presented in even a cursory manner; for all intents and purposes, it was not presented at all. Accordingly, the issue is not preserved for appeal. *In re Espino, supra.*

It is equally clear that the issue of standing was never properly presented to the Bankruptcy Court, a requirement to meet the exceptional circumstances exception to the rule. This is not a situation wherein because of some technical deficiency or inadvertent oversight that the contention was not raised. To the contrary, the Hoofnagles engaged in a long-term, purposeful course of conduct in an effort to obtain an impermissible advantage. Those efforts began with their forming a "new" business—simply dropping the word "International" from the Debtor's name. Sharon Hoofnagle was ostensibly made the owner of the new entity because the Hoofnagles had consulted with counsel and knew that having Paul Hoofnagle disclosed as an owner would be a problem.

Sharon Hoofnagle also was uniquely situated to take improper advantage of the situation because she had actual control over both businesses. That control enabled her to contact the service provider and have the phone numbers and web

˜32˜

address switched from the "old" business to the "new" business. Those actions were taken while ASI was in Chapter 11, a fact well known to Mrs. Hoofnagle. Mrs. Hoofnagle also took possession of all of the computers and records of the "old" business, including its one million plus survey files, again, all while ASI was in Chapter 11, and she began using those very assets in the "new" business. She did not stop there, she even took over possession of ASI's office space and began using it as the "new" business's space, again without bankruptcy court approval.

As Mrs. Hoofnagle was ultimately forced to admit on cross examination, what she literally did was to shut down the Debtor (old Alexandria Surveys) and start up the new business (new Alexandria Surveys), doing the exact same business, with the exact same clients, with the exact same phone number, with the exact same fax number, with the exact same web address and domain name, at the exact same location as the Debtor, using the Debtor's computers and survey files. APP 505-707 [Tr. 27:22-25; 28:1-25; 29:1-8; 31:22-25; 32:1-7; 36:2-25: 37:1] Mrs. Hoofnagle further admitted that the reason she did so was because she knew the Debtor's assets were a major source of its business and therefore would be a valuable tool in the "new" business. APP 505-707 [Tr. 4/18/2013 26:4-19] Mr. Flynn went so far as to say that the Debtor's assets, inclusive of its phone and fax numbers, were vital to the new business.

The deceptive nature of the Hoofnagles actions continued at the Creditor's Meeting at which they failed to disclose the existence of Alexandria LLC, and failed

to inform the Trustee that it had taken possession of, and was using, all of the Debtor's remaining assets. The Hoofnagles also purposefully mislead the Trustee as to the value of the survey files—falsely stating that they had a value of no more than a $1,000, and falsely stating that the same information was now available on line.

It is submitted that all of the foregoing lead to one and only one conclusion. Given that Alexandria LLC had every opportunity to raise the issue of standing in the Bankruptcy Court and failed to do so, they are precluded from raising the issue for the first time on appeal. It is further submitted that the passing reference in its Objection to the Notice of Sale was, at best, a cursory reference to the same and was not sufficient for it to fall within the exception to being able to raise an issue for the first time on appeal. Furthermore, the conduct of the Hoofnagles in these proceedings negates any basis for this Court to consider that the issue was properly raised in the bankruptcy court. It is simply being used by Alexandria LLC as a means to accomplish that which they could not do in the Bankruptcy Court.

2. **Even if Alexandria LLC could raise the issue of ACG's standing for the first time on appeal to the District Court, as the Bankruptcy Court made its determination on ACG's Motion for Judgment after the close of Alexandria LLC's evidence and before having heard ACG's evidence, including its evidence as to standing, this case must be remanded to the Bankruptcy Court to determine ACG's standing.**

Without in any way conceding that the inquiry should go further, in the event it is determined that the issue of standing can be heard for the first time on appeal,

then ACG must be afforded the opportunity to present its evidence in support of its contention that it does have standing. As detailed in the Statement of the Case and Statement of the Facts, after the close of Alexandria LLC's evidence, and before ACG presented its evidence, ACG moved the Bankruptcy Court to overrule Alexandria LLC's objection. The Bankruptcy Court proceeded to rule in accordance with Bankruptcy Rule 7052, made applicable to contested proceedings by Bankruptcy Rule 9014, finding that even accepting the evidenced presented by Alexandria LLC, its objections to the Trustee's Notice of Sale, APP 181-186, should be overruled. Even assuming it could have, Alexandria LLC did not then, nor has it now, objected to the manner in which the Bankruptcy Court reached its conclusion.

The net effect of the foregoing is that ACG has never had the opportunity to adduce any evidence to refute and/or respond to Alexandria LLC's contention, raised for the first time on appeal, that it lacks standing. Perhaps that is why the District Court concluded in its Memorandum Opinion that it was "undisputed that ACG was not a creditor of the debtor and was not a participant in the original case." APP 713-724 Such a conclusion is certainly premature, and more importantly, it is wrong.

Demonstrating ACG's standing requires a bit more unraveling of the Hoofnagles' myriad omissions. ASI, the Debtor, subcontracted out its house location survey drafting work to an entity known as SC Alpha Engineering

(hereinafter "SC Alpha"); a copy of the contract for those services from 2007 was included as Exhibit 16 in ACG's Trial Exhibits. The principal of SC Alpha was Cristian Ortan, and was the individual with whom ASI worked; he was well known to the Hoofnagles.

At the time the Hoofnagles put ASI into Chapter 11 bankruptcy, it was indebted to SC Alpha. However, ASI did not list SC Alpha as a creditor, and thus it never received notice of its bankruptcy filing. That there is no doubt but that ASI knew SC Alpha was a creditor is made clear by its Debtor in Possession Reports, wherein it listed SC Alpha in its "Unpaid Bills Detail" at least as late as the report filed for December 2011, APP 112-121, and in its Schedule of Unpaid Debts filed post-conversion. APP 133-136.

Subsequent to the signing of the contract with ASI, Mr. Ortan formed ACG, and in turn, the work and claims of SC Alpha were transferred to that entity. Accordingly, as of the date and time ACG filed its Motion to Reopen, APP 142-150, it was, in fact, a creditor of ASI and was otherwise a party in interest. Because ACG never had reason to address the issue of standing in the Bankruptcy Court, it never had reason to introduce evidence to establish that it was a proper party to request reopening of the case. It seems axiomatic that if Alexandria LLC is allowed to raise the issue of standing for the first time on appeal, ACG should have the opportunity to present its response through the presentation of evidence. For that reason, at a minimum, the case must be remanded to the Bankruptcy Court to hear

that evidence.

**III. Alexandria LLC may not contend for the first time on appeal that the Debtor's phone number, facsimile number and web address were executory contracts that were deemed abandoned because the Trustee failed to timely accept them after the conversion of ASI's bankruptcy from Chapter 11 to Chapter 7, having failed to advance that contention in the Bankruptcy Court.**

As recited with respect to the first argument, it is well settled in this Circuit that District courts will not review issues raised for the first time on appeal except under exceptional circumstances. *In re Endicott,* 157 B.R. 255, 258 (W.D.Va.1993); *In re Paschall*, 408 B.R. 79, 87 (E.D.Va. 2009); *See also*, *Hancock v. Renshaw*, 421 B.R. 738, 742-43 (M.D.N.C., 2009), citing to *Paschall*.    Such exceptional circumstances would include, at a minimum, a requirement that the record below be clear on the matter. *Matter of Endicott*, 157 B.R. 255 (W.D. Va., 1993); *Matter of Kroner*, 953 F.2d 317, 319 (7th Cir. 1992); *In re Air Conditioning, Inc.*, 845 F.2d 293, 299 (11th Cir.), cert. denied, *First Interstate Credit Alliance Inc. v. American Bank of Martin County*, 488 U.S. 993,  109 S. Ct. 557,  102 L.Ed.2d 584 (1988). Furthermore, where the record reflects that an issue was presented in a cursory manner and never properly presented to the bankruptcy court, the issue is not preserved for appeal. *In re Espino*, 806 F.2d 1001, 1002 (11th Cir.1986).

Whereas Alexandria LLC made, at least, an obtuse reference to the standing issue in its papers yet never advanced those contentions or asked the Bankruptcy Court to rule upon them, it made no contention whatsoever in its papers that the

phone numbers and web page were merely executory contracts that had to be assumed by the Trustee. No such contention appears in either its initial Objection or its Supplemental Objection. No such contention appears in its Memorandum in support of its Objection. The first and only time the contention appears in any fashion is in Alexandria LLC's closing argument, consisting of two short paragraphs, totalling 9 lines. APP 505-707 [Tr. 171:20-25; 172:1-3] Even within those few lines of argument, Alexandria LLC's counsel acknowledged that taking such a position was inconsistent with the contention that it had taken throughout the case; that is, that the phone numbers and web address were not, in fact, property interests, relying upon the Virginia Supreme Court's decision in *Network Solutions, Inc. v. Umbro International, Inc.*, 529 S.E. $2^d$ 80, (Va. 2000). In point of fact, that is exactly what Alexandria LLC contended in paragraph 2 of its Supplemental Objection; that "Neither the debtor nor the trustee have ownership of or any property rights to the debtor's domain name or the debtor's telephone numbers." APP 247-249.

Although ACG specifically argued in its Brief filed in the District Court (Argument No. 2), that Alexandria LLC was raising the executory contract claim for the first time on appeal and should be prohibited from doing so, the District Court never addressed this aspect of the issue, in any respect, in its opinion. Apparently, the District Court was of the view that since it was voiding the order reopening of the case based upon the standing issue, the executory contract contention would only

˘38˘

come before it in the event there was a subsequent reopening of the case. While it may be that in limited circumstances involving the remand of a case to the lower court for further proceedings the District Court may appropriately issue an advisory opinion, given that the District Court was not remanding this case, this aspect of the Court's decision is of no precedential value and is not binding on the Bankruptcy Court. *United States ex rel. Drakeford v. Tuomey Healthcare Sys.*, 675 F.3d 394, 406 (4th Cir. 2012), citing to *Levy v. Lexington County, S.C.*, 589 F.3d 708, 716 (4th Cir. 2009).

The same reasons that this Court should not consider the standing argument for the first time on appeal dictate that there is even less reason to consider the executory contact argument for the first time on appeal. Alexandria LLC did nothing to apprise the Bankruptcy Court or ACG that it may rely on that contention in any of its filings, its opening argument, or its evidentiary presentation. It waited until its closing argument, and mentioned it more as an aside that an actual argument, recognizing that such argument was inconsistent with the position it had taken throughout the case. Moreover, Alexandria LLC made no request that the Bankruptcy Court rule on the issue—nor did it.

As with the standing issue, there are no exceptional circumstances that would suggest that this Court should bend its well-reasoned and sound principal of not considering issues that are raised for the first time on appeal with regard to the executory contract issue. To the contrary, the pattern of the Hoofnagles' conduct,

including their actively seeking to conceal from the Chapter 7 Trustee that Alexandria LLC, through Mrs. Hoofnagle, had taken possession of the phone numbers and web address while ASI was in Chapter 11, strongly mitigate against such consideration.

**IV.   Even if Alexandria LLC could raise the issue that the phone number, facsimile number and web address were executory contracts that were deemed abandoned because the Trustee failed to timely assume them after the conversion of ASI's bankruptcy from Chapter 11 to Chapter 7 for the first time on appeal to the District Court, it is prohibited from doing so for having taken possession of the same without leave of the Bankruptcy Court while ASI was in Chapter 13.   As a practical matter, the Chapter 7 Trustee could not have assumed any such contracts because Alexandria LLC had already transferred those contracts to itself during ASI's Chapter 13 proceedings.**

As set forth in detail in the Statement of Facts, while ASI was in Chapter 11 and was operating, Sharon Hoofnagle contacted the service provider for ASI's phone and internet service and had them transfer the service from ASI to Alexandria LLC. Notwithstanding efforts to show otherwise, she did so at a time when ASI was operating, the bill was current, and the service was up and running. As she reluctantly admitted on cross examination, the service had not been disconnected or terminated. The evidence also was replete that at no time did the Hoofnagles, or their entities, inclusive of the Debtor and Alexandria LLC, inform the Court that they had taken possession of the phone numbers and web address. It also is without dispute that no effort was made to seek permission from the Bankruptcy Court to

take possession of numbers and web address, including relief from the automatic stay which expressly prohibited the Hoofnagles from doing what they did.

The transfer of the phone numbers and web address took place in October of 2011. The case was not converted to a proceeding under Chapter 7 until the Bankruptcy Court entered the order of conversion on January 27, 2012, three months later. Assuming for the purposes of argument that the phone numbers and web address were executory contacts that must be assumed by the Trustee, it is the order converting the case to Chapter 7 that is the "order for relief" that starts the 60 day clock of 11 U.S.C. §365(d)(1) running.

While the sequence of events was instrumental to the District Court's decision, the District Court got the time line wrong. On page 2 of its Memorandum Opinion, the District Court recites that the Debtor ceased doing business in October 2010; however, the evidence at the hearing was that the Debtor was doing business into November of 2011, more than one (1) year after what the District Court believed to be the case. In fact, the Debtor in Possession Report for the month of December 2011, filed January 16, 2012, states that ASI was doing business in December of 2011. Also on page 2 of its Memorandum Opinion, the District Court states that Alexandria LLC acquired the "former" phone number and web address of the debtor in October 2012, which would have been after the case was closed on May 18, 2012. Of course, the evidence actually was that Alexandria LLC had the phone numbers and web address transferred to it shortly after it was formed—which

was early October 2011, a full year before the District Court believed the transfer occurred, and more than 5 months before the case was closed.

It is perhaps understandable that the District Court reached the conclusion that it did based upon its incorrect time line. However, since the transfer actually occurred while the Debtor was operating as a Debtor in Possession in Chapter 11, with its phone numbers and web service in place, fully functional and paid for, many months before the conversion of the case to a Chapter 7 proceedings, as opposed to after the cessation of the Debtor's business and after the closing of the bankruptcy case, the 60 day time limitation of 11 U.S.C. §365(d)(1) simply never became operative.

Even if the time limitation of 11 U.S.C. §365(d)(1) did become operative, at the point in time the case was converted and the Chapter 7 Trustee appointed, there were no longer any contracts to assume. Alexandria LLC had taken those numbers and the web address months earlier—all without notice to and/or approval of the Bankruptcy Court. It would be a true perversion of justice to allow Alexandria LLC to rely on the assumption provisions when by its own actions, it had made it impossible for the Trustee to assume those purported contracts. For this reason alone, the Court should not consider this contention.

**V. The phone number, facsimile number and web address were property of the bankruptcy estate and thus subject to sale by the Chapter 7 Trustee. This is an issue of first impression in this Circuit.**

As set forth in Argument No. 3, after voiding the Order reopening the case, effectively ending the appeal, the District Court went further and issued an advisory opinion on whether the phone numbers and web address were property of the bankruptcy estate. As also set forth in Argument No. 3, while it may be that in the limited circumstances where a case is remanded to the lower court for further proceedings the District Court may appropriately issue an advisory opinion, given that the District Court was not remanding this case, this aspect of the Court's decision is of no precedential value and does not bind the Bankruptcy Court. *United States ex rel. Drakeford v. Tuomey Healthcare Sys.,* 675 F.3d 394, 406 (4th Cir. 2012), citing to *Levy v. Lexington County, S.C.*, 589 F.3d 708, 716 (4th Cir. 2009).

In the interest of being complete, however, ACG must address the substance of the District Court's opinion. In reaching its conclusion that the phone numbers and web address were not property of the bankruptcy estate, the District Court relied exclusively upon the Virginia Supreme Court's decision in *Network Solutions, Inc. v. Umbro International, Inc.*, 529 S.E. 2d 80, (Va. 2000). However, *Network Solutions* is neither dispositive nor applicable to the issues at hand. As the Bankruptcy Court properly noted, that decision was a garnishment case which although lengthy in content, was very narrow in is holding: it considered only the reach of Va. Code §8.01-511; specifically, whether a domain name was a liability owed from the garnishee (the service provider) to the judgment debtor—the only

interest under the foregoing provision of the Virginia Code that is subject to a
garnishment summons. Emphasizing that its decision related only to the ability to
garnish a domain name, the Virginia Supreme Court stated:

'    Under Code § 8.01-511, a garnishment summons may be issued with
     respect to "a liability on any person other than the judgment debtor." In
     a garnishment proceeding, "[o]rdinarily, the only adjudicable issue is
     whether the garnishee is liable to the judgment debtor, and if so, the
     amount due." In the present case, the only "liability" due on the part
     of NSI is the provision of its Internet domain name services to the
     judgment debtor. Code § 8.01-511. Although, as Umbro points out,
     domain names are being bought and sold in today's marketplace, we are
     not willing to sanction the **garnishment** of NSI's services under the
     terms of our present **garnishment statutes**. To do so would allow
     Umbro to "step into the shoes" of the judgment debtor. Even though
     the Internet is a "new avenue of commerce…we cannot extend
     established legal principles beyond their statutory parameters. 259
     Va. at 773, 529 S.E.2d at ___ (2000) (emphasis added)

'    Chief Justice Carrico and Justice Compton dissented from the majority's
opinion. However, in doing so, they noted that "…the trial court correctly ruled
that the judgment debtor, by virtue of the domain name registration agreements with
NSI, has a current possessory interest in the use of the domain names, that is, a
contractual right to the exclusive use of the names it has registered with NSI."
*Network Solutions v. Umbro International,* 259 Va. 759, 774, 529 S.E.2d 80 ___
(2000). A possessory interest is clearly a legal or equitable interest of the debtor
that is property of the bankruptcy estate. 11 U.S.C. §541(a).

'    In a footnote, the District Court referenced a fairly recent Virginia case that it
viewed as standing for the proposition that a plaintiff has no property interest in a

phone number. *Southeastern Wholesale Corp. v. Cox Communications Hampton Roads, LLC*, 2013 WL 2147478, No: 2:12-cv-00701 (E.D.Va. May 14, 2013). Respectfully, a review of that case shows that, contrary to the District Court's statement, it does not so hold. If anything, it further supports the conclusion that that the District Court's view of the holding *Network Solutions* is incorrect. In the *Southeastern Wholesale* case, Judge Morgan expressly states that the *Network Solutions* case is "procedurally distinguishable and does not address the question of whether an individual has a property interest in a telephone number." (Op. p. 10)

In fact, Judge Morgan states:

> Thus, it seems that Virginia has **not** spoken directly on whether an individual or entity may have an ownership interest in a telephone number, and there is a split of federal authority.

> Because there is a significant split of authority on this issue (and importantly, little guidance from the Virginia courts), it seems inappropriate to conclude as a matter of law Plaintiff has no property interest in the toll-free number." (Op. p. 12) (emphasis added)

We ultimately will never know what the outcome would have been in the *Southeastern Wholesale* case because the parties settled their dispute and the case was dismissed on stipulation without further decision.

It also is to be emphasized that Alexandria LLC produced no evidence whatsoever as to the nature of the contractual relationship between ASI and the provider of its web address. Its "evidence" of the contractual relationship for the phone numbers, for which Alexandria LLC asserted Cox was the provider, consisted

of tariffs published for Verizon, not Cox. The burden was on Alexandria Surveys to adduce that evidence; it failed to do so.

It is further submitted that the better reasoned decisions and the weight of authority is that phone numbers and web addresses are property of the bankruptcy estate. Two earlier cases, the 2nd and 9th Circuits, relying specifically on the tariffs of the Pacific Bell Telephone Company in the late 60's and early 70's, and decided based upon §311 of the former Bankruptcy Act, found that a telephone number was not a property interest. S*lenderella Sys. of Berkeley, Inc. v. Pacific Tel & Telegraph Co.*, 286 F2d 488 (2d Cir. 1961), and *Rothman v. Pacific Tel. & Telegraph Co.*, 453 F. 2d 848 (9th Cir. 1971). The 1st and 5th Circuit have expressly rejected the *Slenderella* and *Rothman* line of reasoning, and have held that telephone numbers are, in fact, a property interest. *Darman v. Metropolitan Alarm Corp.*, 528 F. 2d 908 (1st Cir. 1976); *Matter of Fontainebleau Hotel Corporation*, 508 F. 2d 1056 (5th Cir. 1975). In the latter case, the 5th Circuit observed:

Both of these cases are extremely brief discussions of the issue, however, and we believe they should not be followed. They rely heavily on the fact that, as in this case, the telephone company tariffs recited that a subscriber acquires no property rights in a telephone number when he is permitted the use of it. A tariff, however, drafted by the company and certain to be self-serving, cannot determine the meaning of the term "property" in the federal bankruptcy statute. *The telephone numbers are a valuable asset, just like the hotel's building or furniture.* The purpose of summary jurisdiction is to give the bankruptcy court a quick means of preserving the wherewithal for maintaining the debtor's business. Protecting use of the telephone numbers by the debtor clearly falls within that responsibility.    *Id. at* 1059 (emphasis added).

The Fifth Circuit, in *Darman*, went on to observe that while it may be that before the filing of bankruptcy, the telephone company may have had certain rights under state law, "[a]fter the filing of the petition, the demands of the bankruptcy laws take precedence. If a creditor, like the telephone company, could continue to enforce his state law rights after the initiation of the bankruptcy proceedings, the bankruptcy laws would be meaningless. Their very purpose is to suspend the normal operation of rights and obligations between the debtor and his creditors." 508 F. 2d at 1059.

In this particular case, in reaching its decision the Bankruptcy Court relied upon the case of *In re Connecticut Pizza, Inc.*, 193 B.R. 217 (1996). The District Court did not even mention the foregoing decision, much less attempt to distinguish it in any way. In *Connecticut Pizza*, the bankruptcy court for the State of Maryland, following *Fontainebleau* and the U.S. District Court for the Northern District of Illinois decision in the *Matter of Walter J. Kassuba*, 396 F. Supp. 324 (N. D. Ill. 1975), found specifically that the phone numbers for a bankrupt pizza delivery business were property of the bankruptcy estate. The logic and reasoning in *Connecticut Pizza* are sound and consistent with bankruptcy and reality—phone numbers and web addresses are valuable commodities, they are bought and sold regularly, as exemplified not only by the foregoing cases, but by a case from another bankruptcy court case in the Eastern District of Virginia: *In re:*

*Huntley Nyce Company*, Case No. 09-17414, recited to by ACG at the hearing.    In that case, Judge Mayer, over objection of one of the parties, approved the sale by the debtor of certain assets, inclusive of its telephone numbers and domain names.

## VI. The Bankruptcy Court was correct in ruling that the servers were not scheduled by ASI and thus were not abandoned when the case was closed and were subject to sale by the Chapter 7 Trustee.

The Bankruptcy Court heard two days of evidence, and reviewed a multitude of documents. After duly considering all of that evidence and the argument of counsel, it found as a matter of fact that the servers are distinct from the computers. That decision is sound and supported by the facts.

In reaching its conclusion that there was no evidence to support the Bankruptcy Court's factual determination, the District Court relied upon a purported factual recitation in Alexandria LLC's Brief that the servers used by the Debtor "were in fact, desktop computers used in that capacity." Memorandum Opinion, p. 8. The problem with that reliance, however, is that Alexandria LLC, as it was prone to do throughout its recitation of "facts" in its Brief, is not accurately reciting to the record. The testimony of Mr. Hoofnagle on which Alexandria LLC relies is not discussing the distinction (or lack thereof) between computers and servers, but his estimation of how many of the Debtor's files were saved on the hard drive of the computers. After giving his estimation, he was asked if the computers where these files were saved "…were the same computers listed in [ASI's] schedules, as

'

computers on Schedule B...." APP 345-505 [Tr. 99:24-25; 100:3-9] He did not testify that these computers were the servers, which is what Alexandria LLC asserted in the portion of its Brief recited by the District Court.

That there was a distinction between the computers and servers was established in the testimony of Mrs. Hoofnagle on the second day of the evidentiary hearing. When asked whether during the period of time the Debtor and ACG shared office space they also "shared computer facilities and servers and so forth", Mrs. Hoofnagle responded that they did share the same "servers" but pointedly did not state in her answer that they shared computers. APP 505-707 [Tr. 7:8-18] Shortly after the foregoing testimony, Mrs. Hoofnagle was then asked how it was that ACG had the ability to digitize "your" [referring to the Debtor's] files." Her response:

"Because we had everything in the same room. We - - we - - the server, the computer was all in the same room" APP 505-707 [Tr. 9:1-4]

Later on, when questioned about the move from one location to another, Mrs. Hoofnagle was asked whether "the computers, the server all came with you?" She responded no, that some of the furniture was left behind. APP 505-707 [Tr. 44:10-20]

Because the Bankruptcy Court's finding regarding the servers was not clearly erroneous it must stand. As such, the District Court was without authority to reverse the same.

## **CONCLUSION**

For the foregoing reasons, Alexandria Consulting Group, LLC, prays that the
District Court's Order of November 7, 2013, APP 713-724, be reversed, and that the
Order of the Bankruptcy Court of April 26, 2013, APP 707-712, be affirmed and
reinstated. Alternatively, if this Court were to find that the issue of standing or the
issue that the phone numbers and web address are the subject of executory contracts
can be raised for the first time on appeal, ACG prays that the matter be remanded to
the Bankruptcy Court to hear ACG's evidence and make a determination of those
issues. Alexandria Consulting Group, LLC further requests that this matter be
remanded to the Bankruptcy Court for a determination of a proper award of
attorney's fees and costs pursuant to 11 U.S.C. 105.

Respectfully submitted,

**Alexandria Consulting Group, LLC**
*By Counsel*

**O'CONNOR & VAUGHN LLC**
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
(703) 689-2100 Telephone
(703) 471-6496 Facsimile

By ____/s/ Robert L. Vaughn, Jr.
Robert L. Vaughn, Jr., VSB # 20633
*Counsel for Alexandria Consulting Group, LLC*

## REQUEST FOR ORAL ARGUMENT

Alexandria Consulting Group respectfully requests that this Court hear oral argument in this case. Among other matters, this appeal raises an issue of first impression in this Circuit as to whether phone numbers and web addresses are property of the bankruptcy estate. This is an issue which has been raised in cases in this Circuit prior to the present action, and undoubtedly will be raised in more and more cases in the future; it is an issue on which the Bankruptcy Courts and District Courts, as well as the public, need a definitive answer.

Respectfully submitted,

**Alexandria Consulting Group, LLC**
*By Counsel*

**O'CONNOR & VAUGHN LLC**
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
(703) 689-2100 Telephone
(703) 471-6496 Facsimile

By ___/s/ Robert L. Vaughn, Jr.
        Robert L. Vaughn, Jr., VSB # 20633
        *Counsel for Alexandria Consulting Group, LLC*

## **CERTIFICATE OF COMPLIANCE**

In accordance with Rules 32(a)(7)(B) and (C) of the Federal Rules of

Appellate Procedure, the undersigned counsel for Appellant certifies that the

accompanying Brief is printed in 14 point typeface, with serifs, and, including

footnotes, contains no more than 14,000 words.    According to the

word-processing system used to prepare the Brief, Microsoft Word, it

contains 13,779 words, inclusive of the entirety of the Brief.

'

/s/ Robert L. Vaughn, Jr
Robert L. Vaughn, Jr.

**O'CONNOR & VAUGHN LLC**
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
(703) 689-2100 Telephone
(703) 471-6496 Facsimile

By ____ /s/ Robert L. Vaughn, Jr.
        Robert L. Vaughn, Jr., VSB # 20633
        *Counsel for Alexandria  Consulting Group, LLC*

'

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2014, the foregoing [corrected] Brief of Appellant was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Richard G. Hall, Esq.
7369 McWhorter Place, Suite 412
Annandale, Virginia 22003

Steven Ramsdell, Esq.
Tyler, Bartl, Ramsdell & Counts, PLC
300 North Washington Street, Suite 202
Alexandria , Virginia 22314

I further certify that on April 2, 2014, eight paper copies of the Brief were filed with the Clerk of the Court by Federal Express overnight delivery.

/s/ Robert L. Vaughn, Jr
Robert L. Vaughn, Jr.