**Record No. 13-2393**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | |
|---|---|
| ALEXANDRIA CONSULTING | * |
| GROUP, LLC | * |
| | * |
| Appellant | * |
| | * |
| v. | * |
| | * |
| ALEXANDRIA SURVEYS, LLC | * |
| | * |
| Appellee | * |
| | * |

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA – ALEXANDRIA DIVISION

**REPLY BRIEF OF APPELLANT**

Robert L. Vaughn, Jr., Esq.
O'CONNOR & VAUGHN LLC
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
T 703-689-2100
F 703-471-6496

*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………  iii

PROCEDURAL HISTORY ……………………………………………..  1

PARTIES TO THE APPEAL ………………………………………  2, 3

SUMMARY OF FACTS ……………………………………………..  3 – 5

STATEMENT OF FACTS ……………………………………………  5 – 6

APPLICABLE STANDARD OF REVIEW ……………………………  6 – 7

ARGUMENT …………………………………………………………  7 –

    I. Alexandria LLC may not contend for the first time
    on appeal to the District Court that ACG lacked standing
    to reopen ASI's bankruptcy case having failed to raise that
    contention in the Bankruptcy Court. ……………………………  7 – 14

    II. Even if Alexandria LLC could raise the issue of ACG's
    standing for the first time on appeal to the District Court, as
    the Bankruptcy Court made its determination on ACG's
    Motion for Judgment after the close of Alexandria LLC's
    evidence and before having heard ACG's evidence, including
    its evidence as to standing, this case must be remanded to
    the Bankruptcy Court to determine ACG's standing. …………  7 – 14

    III. Alexandria LLC may not contend for the first time
    on appeal that the Debtor's phone number, facsimile
    number and web address were executory contracts
    that were deemed abandoned because the Trustee failed
    to timely accept them after the conversion of ASI's bankruptcy
    from Chapter 11 to Chapter 7, having failed to advance that
    contention in the Bankruptcy Court. ……………………………  14 – 15

IV. Even if Alexandria LLC could raise the issue that
the phone number, facsimile number and web address
were executory contracts that were deemed abandoned
because the Trustee failed to timely assume them after
the conversion of ASI's bankruptcy from Chapter 11
to Chapter 7 for the first time on appeal to the District
Court, it is prohibited from doing so for having taken
possession of the same without leave of the Bankruptcy
Court while ASI was in Chapter 13.  As a practical matter,
the Chapter 7 Trustee could not have assumed any such
contracts because Alexandria LLC had already transferred
those contracts to itself during ASI's Chapter 13 proceedings. ....    15 - 16

V. The phone number, facsimile number and web address
were property of the bankruptcy estate and thus subject
to sale by the Chapter 7 Trustee.  This is an issue of first
impression in this Circuit. …………………………………………...    16 – 17

VI. The Bankruptcy Court was correct in ruling that the
servers were not scheduled by ASI and thus were not
abandoned when the case was closed and were subject to
sale by the Chapter 7 Trustee. ……………………………………    17

CONCLUSION ……………………………………………………………    18

CERTIFICATE OF COMPLIANCE ……………………………………    19

CERTIFICATE OF SERVICE …………………………………………    20

## TABLE OF AUTHORITIES

*In re D'Antignac*, Case No. 05-10620,
(Bankr. S.D. Ga., 2013) …………………………………………………    10

*In re Johns-Manville Corp.*,
36 B.R. 743 (Bankr.S.D.N.Y.1984) …………………………………………    9, 10

*In re Public Service Co. of New Hampshire*,
88 B.R. 546, 550 (Bankr.D.N.H.1988) ………………………………………    9

*In re Tarrer*, 273 B.R. 724
(Bankr. N.D. Ga., 2001) ………………………………………………..    9, 10

*Network Solutions, Inc. v. Umbro International, Inc.*,
529 S.E. $2^d$ 80, (Va. 2000) …………………………………………………    15, 16

*Yadkin Valley Bank v. MaGee*,
5 3d 750 (4th Cir. 1993) ………………………………………………    10

Bankruptcy Code § 1109(b) ………………………………………………..    9

FRAP 28(b) …………………………………………………………………    1

Va. Code §8.01-511 ………………………………………………………    16, 17

259 Va. 759, 774, 529 S.E.2d 80, ___ (2000) ……………………………    17

## **APPELLANT'S REPLY BRIEF**

COMES NOW the Appellant, Alexandria Consulting Group, LLC ("ACG") and submits the following Reply Brief in support of its appeal in this matter. It is to be noted that Alexandria LLC's "Response Brief" does not follow the form required by FRAP 28(b), and thus does not follow the format of the Brief of the Appellant. In addition thereto, Alexandria LLC has inserted sections that are not provided for by the FRAP 28(b), which sections are mostly another means of further arguing its various contentions. Nevertheless, ACG will endeavor to relate the Response to the issues raised in its opening Brief.

## **PROCEDURAL HISTORY**

ACG will presume that this section of its Response is intended to be Alexandria LLC's version of the Statement of the Case. Herein, Alexandria LLC gives a thumb nail sketch of a small portion of the procedural history of this matter, couched in terms favorable to it. For example, Alexandria LLC states that it is not pursuing the Bankruptcy Court's order authorizing the sale of the Debtor's paper files "for practical reason." The practical reason alluded to, but not stated, is that Alexandria LLC copied all of those files before they were initially turned over to ACG.

However, Alexandria LLC does not take issue with any aspect of the Statement of the Case contained in ACG's Brief. Accordingly, ACG will

proceed on the basis that Alexandria LLC concurs with its Statement of the Case.

## **PARTIES TO THE APPEAL**

As referenced above, this is one of the sections of the Response that is added by Alexandria LLC in an effort to find additional avenues to argue its contentions without being constrained to support those contentions by reference to the record. In In this instance, under the guise of supposedly clarifying the parties, which is done with crystal clarity in ACG's Statement of the Case, Alexandria LLC attempts to suggest that there is no relationship between it and the Debtor, ASI. That is far from an accurate depiction. To the contrary, and as detailed in ACG's brief, the two are effectively one and the same. Paul and Sharon Hoofnagle were the owners of the Debtor, ASI. While it was in Chapter 11 bankruptcy, the Hoofnagles formed a new entity, Alexandria LLC, and literally took possession of all of the Debtor's assets and began operating its business out of the same location as if it were Alexandria LLC's own. As Sharon Hoofnagle admitted on cross examination, what she did in 2011 was to shut down the Debtor, ASI, and start up Alexandria LLC, doing the exact same business with the exact same clients, with the exact same phone number, fax number, web address/domain name, at the exact same address as the Debtor, and using the Debtor's survey files and computers. APP 531-533; 534-535; 540 [Tr. 27:22-25; 28:1-25; 29:1-8; 31:22-25; 32:1-7;

36:2-25: 37:1]1    The foregoing was done all without approval of the
Bankruptcy Court, and without compensation to the Debtor—which in turn,
meant no compensation to its creditors. In short, Alexandria LLC obtained the
Debtor's assets in a surreptitious manner, in violation of bankruptcy law, and
has continued to benefit from those wrongful actions to this very day.

## SUMMARY OF FACTS

This is another portion of its Reply that is not provided for by the Rules.
If is intended to be Alexandria LLC's version of the Statement of the Case, it
fails as Alexandria LLC does not attempt to state facts that it contends are
relevant to the issues for review.    Instead, this section of the Response again
serves as nothing more than a format for Alexandria LLC to assert as "facts"
various contentions that are no more than that, contentions, again without
recitation to the record.

For example, Alexandria LLC states that it did not make an appearance
at the Motion to Reopen the Debtor's bankruptcy case.    As detailed in its
Brief, this simply is not a true statement.    Alexandria LLC was provided with
actual notice of the Motion to Reopen, Ms. Hoofnagle appeared at the hearing
on its behalf, and was prepared to provide testimony as to how Alexandria
LLC supposedly came to possess the phone numbers and web site of the

---

1 For consistency, ACG will continue to refer to the bates stamp numbers of
the Appendix

Debtor. The affidavit of Ms. Hoofnagle, tendered by the Debtor's counsel to ACG's counsel prior to the Motion to Reopen appears on page 162 of the Appendix.

At the bottom of page 5 of its Response, Alexandria LLC asserts, without recitation to the record, that at the time of the reopening of the case, ACG was "completely a third party to the proceeding...." This is another statement that is not accurate and is part of the ongoing effort of Alexandria LLC to couch its argument as a fact. As set forth in its Brief, among the omissions made by the Hoofnagles in the bankruptcy proceedings of ASI was their failure to list SC Alpha as a creditor. There is no doubt but that ASI knew SC Alpha was a creditor; its own Debtor in Possession Reports listed SC Alpha in its "Unpaid Bills Detail" at least as late as the report filed for December 2011 (APP 112-121), and in its Schedule of Unpaid Debts filed post-conversion. APP 133-136. However, because it chose not to list SC Alpha, that entity did not receive notice of ASI's bankruptcy filing. Had the issue of standing been raised in the Bankruptcy Court, ACG would have put on evidence establishing that Cris Ortan was known by the Hoofnagles as the principal of SC Alpha, and were well aware that Mr. Ortan had joined with others to form ACG. Mr. Ortan also would have verified that SC Alpha's receivables, including the debt owed to it by ASI, were held by ACG. Accordingly, as of the date and time ACG filed its Motion to Reopen, (APP

142-150), ACG was, in fact, a creditor of ASI and was otherwise a party in interest.

In addition to the foregoing, in its continuing effort to paint itself as an innocent bystander, Alexandria LLC starts out this section of its Response by stating that after filing Chapter 11, ASI's business "grew worse." Of course, it pointedly omits the reason why: it was because the Hoofnagles literally shut down the Debtor in October 2011and at the same time started up Alexandria LLC, using the Debtor's assets and doing the Debtor's business, so that they could take advantage of the Debtor's business without the detriment—its debts. In reality, what they did was simply drop the word "International" from the name and continued on as before.

## STATEMENT OF FACTS

As with its Summary of Facts, Alexandria LLC uses this portion of its Response as more of an avenue to make assertions regarding its position than to recite actual facts. Likewise, the assertion of fact is infrequently accompanied by a reference to the record, or if there is one, the reference is not consistent with the assertion of fact.

This is best exemplified by the opening line wherein it states, without reference to the record, that Alexandria LLC "assumed the business and assets" of the Debtor. The assumption of the Debtor's assets was a calculated decision made by the Hoofnagles, and was made in clear violation

of bankruptcy law.

The first paragraph of its Statement of Facts goes on to make assertions that by October 2011, the debtor had exhausted its funds and Mr. Hoofnagle no longer had personal resources to put into the business. Alexandria LLC recites to pages 432 and 433 of the Appendix as the basis for this statement. However, the actual testimony provided by Mr. Hoofnagle was that it was not until some unspecified in 2012—not October 2011, that the Debtor lacked funds to pay the phone bill. The referenced testimony on page 493 is that the Hoofnagles terminated the phone service in October 2011 because the Debtor purportedly had stopped doing business. Not only is that not supported by the Debtor in Possession Statements filed for the period thereafter, the reality was that the Hoofnagles had simply shifted the business from the Debtor to Alexandria LLC.

ACG could spend considerable time pointing out the lack of support in the record for the various factual assertions made by Alexandria LLC. Instead, ACG will rely on its factual recitation, which it submits is supported by the record, and supports the relief requested in this appeal.

## **APPLICABLE STANDARD OF REVIEW**

Alexandria LLC recites general parameters as to the standard of review by the District Court of the Bankruptcy Court's ruling, which ACG does not dispute, but does not address the standards applicable to this appeal. Those

standards were set forth in ACG's Brief; given that Alexandria LLC does not

dispute the standards recited by ACG for purposes of this appeal, ACG will

proceed on the basis that Alexandria LLC concurs with those standards.

## ARGUMENT

I. Alexandria LLC may not contend for the first time on appeal to the District Court that ACG lacked standing to reopen ASI's bankruptcy case having failed to raise that contention in the Bankruptcy Court.

II. Even if Alexandria LLC could raise the issue of ACG's standing for the first time on appeal to the District Court, as the Bankruptcy Court made its determination on ACG's Motion for Judgment after the close of Alexandria LLC's evidence and before having heard ACG's evidence, including its evidence as to standing, this case must be remanded to the Bankruptcy Court to determine ACG's standing.

ACG's initial contention in this appeal is that Alexandria LLC may not

advance its standing argument for the first time on appeal. Surprisingly,

Alexandria LLC never directly addresses this issue in its Response. The

closest it comes is on page 17 of its Brief in its argument that the Order

reopening the case was not appealable. That, of course, presumes that the

issue of standing was raised in the Bankruptcy Court, that the Bankruptcy

Court was called upon to rule on the issue, and that the Bankruptcy Court did,

in fact, rule on the issue. It seems axiomatic that there must be an adverse

ruling before a party has something to appeal. That, of course, never

happened.

Alexandria LLC argues that ACG's contention that Alexandria LLC is prohibited from raising the issue of standing for the first time on appeal is misplaced for two reasons. The first is that the Order reopening the case was not a final order and thus not appealable. The point is not whether the Order reopening the case was appealable; it is whether, at any time before or during the hearing on the Motion to Reopen, Alexandria LLC raised the issue of standing? The answer is a clear and unequivocal no.

Alexandria LLC's second point at least comes a bit closer to the mark, but still misses by a wide margin. In a truly bizarre twist, Alexandria LLC is suggesting that it did not have "standing" to object to the "standing" of ACG to bring the Motion to reopen. Alexandria LLC does not cite to a single authority for such a proposition. Its contention is flawed on multiple levels.

First, as set forth in ACG's opening Brief, the Motion to Reopen and related Notice of the hearing thereon was served upon Alexandria LLC. That notice stated very clearly, some of it in bold, underlined print, that the recipient needed to take action if they did not want the Bankruptcy Court to grant the relief sought. The notice set forth no limitations on Alexandria LLC's ability to object to the reopening.

Second, it assumes that any of the persons/entities noticed for the Motion to Reopen would have raised the issue that Alexandria LLC lacked standing to oppose the reopening. As a practical matter, that would not have

happened. The only parties at the hearing were ACG, Alexandria LLC, and the Debtor, ASI. As was detailed in its Brief, and as noted below, for all practical purposes, Alexandria LLC is one and the same as ASI. Alexandria LLC had possession of the Debtor's assets and had a strong motivation for not wanting the case to be reopened because of exactly what happened once the case was reopened: Alexandria LLC had to pay significant dollars to retain those assets, and when it did not, it could not retain them.

Third, the case law, the facts, and the purpose of bankruptcy proceedings all fail to support Alexandria LLC's position. There is no specific statute or Bankruptcy Rule that identifies the parties who have standing to object to a motion to reopen. Bankruptcy Code § 1109(b) provides that a "party in interest" may raise and may appear and be heard on any issue in a Chapter 11 case. While there is no corresponding code section for a Chapter 7 proceeding, there is no reason to assume that the same standard would not apply. *See In re Tarrer*, 273 B.R. 724 (Bankr. N.D. Ga., 2001) (finding that a "party in interest" had standing to object to reopening of a Chapter 13 proceeding).

As stated by the *Tarrer* Court, it has been well established that the concept of a party in interest is to be broadly construed. *Id*. at 731, citing to *In re Public Service Co. of New Hampshire*, 88 B.R. 546, 550 (Bankr.D.N.H.1988), *In re Johns-Manville Corp.*, 36 B.R. 743

(Bankr.S.D.N.Y.1984). In *Tarrer*, the parties objecting to the reopening were entities against which the former debtor had instituted an arbitration claim, a claim which was not disclosed in his bankruptcy proceedings. Notwithstanding the debtor's contention otherwise, and notwithstanding the bankruptcy court's finding that the third parties "were neither debtors, creditors, or trustees in the bankruptcy case" the court found that their interest in avoiding long and potentially expensive litigation on the merits was "a sufficiently concrete interest to support a finding that they are parties in interest for the purpose of objecting to the Debtors' motion to reopen." 273 B.R. at 731.

This Court's decision in *Yadkin Valley Bank v. MaGee*, 5 3d 750 (4th Cir. 1993), a case cited by Alexandria LLC in its Response, is consistent with that broad interpretation of a party in interest. In that case, the Court found that a party in interest includes "all persons whose pecuniary interests are directly affected by the bankruptcy proceedings." If anything, these proceedings make clear that Alexandria LLC's pecuniary interests were directly affected by ASI's bankruptcy proceedings, in particular, the Motion to Reopen. Not only has it spent thousands of dollars in litigation costs attempting to hold on to the assets of the Debtor, Alexandria LLC was willing to pay $28,000 to ASI's bankruptcy estate to do so. (*See also, In re D'Antignac*, Case No. 05-10620, (Bankr. S.D. Ga., 2013) citing *Yadkin*

holding with approval in a case dealing specifically with the issue of whether a third party had standing to object to the reopening of a bankruptcy case).

Fourth, the validity of Alexandria LLC's position is belied by its own inconsistencies. It suggests that it did not have standing to object to ACG's purported lack of standing at the time of the hearing on the motion to reopen, yet it miraculously attained standing when the Trustee filed a motion to sell the Debtor's property that was in its possession. If, as Alexandria LLC has fervently argued in the District Court and now in this Court, that only those parties specifically enumerated in §1109(b) are parties in interest, that is, the debtor, creditors, the trustee, or an equity security holder, then by its own definition, it still lacks standing to object to ACG's supposed lack of standing. The filing of the Trustee's motion to sell did not transmute Alexandria LLC's status into any of the enumerated categories. It did not, at that point or any other point, become a creditor, or an equity security holder. Its position was identical to that which existed as of the date the Motion to Reopen was filed and heard. Thus, by its own definition, and following its own argument, it still has no standing to object to ACG's Motion to Reopen.

Moreover, Alexandria LLC's suggestion that the filing of Trustee's motion to approve the sale of the Debtor's assets to ACG was the first time that it became an "interested party" is, to put it mildly, disingenuous. Alexandria LLC knew, without question, that ACG sought to reopen this

bankruptcy case to administer the very assets which it had taken from the Debtor during the Debtor's Chapter 11 proceedings. The Motion to Reopen specifically avers that Alexandria LLC was formed during ASI's Chapter 11 proceedings, that the principals of ASI and Alexandria LLC are one and the same, that Alexandria LLC is "utilizing the Debtor's customer lists, files, web page, phone number, and fax number in its business operations," that the foregoing have a monetary value, and were not scheduled by the Debtor nor administered by the Trustee. APP. 142-153.

While couched as a pleading by the Debtor, the Response to the Motion to Reopen was really the response of Alexandria LLC, which was contending that it had come into possession of the phone numbers and web site by legitimate means. As unequivocal confirmation that Alexandria LLC believed it had an interest at stake, its representative, Sharon Hoofnagle, appeared at the Motion to Reopen, prepared to testify in an effort to retain those assets, and presumably in accordance with her affidavit which had been transmitted by ASI's counsel to ACG's counsel prior to the hearing. APP. 161-163.

The transcript of the hearing on the Motion to Reopen also makes it clear that while counsel appeared ostensibly on behalf of the Debtor, the argument was made for the benefit of Alexandria LLC. The simple fact is that the Debtor had no reason to oppose reopening of the case—it had nothing

to gain nor anything to lose thereby.  At the risk of over using the term, as a
practical matter, the Debtor was no longer a party in interest.  The only effect
of the reopening was to permit the administration of assets and the generation
of funds to the bankruptcy estate. The only entity effected was Alexandria
LLC.  APP. 163-178.  The effect was direct, and definitely pecuniary.

Alexandria LLC also includes a section in its Brief arguing that ACG
was not an interested party.  This contention, assuming it ever could, can no
longer be sustained given Alexandria LLC's own position that a party in
interest is more than just a creditor or equity security holder; it includes a
party whose pecuniary interests are affected.  Alexandria LLC has gone to
great lengths to portray ACG as a competitor who sought to obtain the assets
of the Debtor for pecuniary gain.  Assuming for sake of argument that its
contention is correct, Alexandria LLC has ascribed to ACG the characteristics
of a party in interest.

While ACG is of the belief that Alexandria LLC's argument as to
standing cannot be made at the appellate level, if this Court were to decide
otherwise, it cannot be over emphasized that there has never been an
evidentiary hearing on that point.  Because Alexandria LLC never advanced
the claim at the time of the Motion to Reopen, it was never addressed at that
time.  Had it done so, worst case scenario, the Trustee who had been in the
courtroom only minutes before, could have been summoned back into the

courtroom and would have put on the record that he joined in the Motion. The fact that this argument could have been so easily avoided had it been raised at the beginning, when it should have been, is exactly why it is not to be raised for the first time on appeal. Thousands of dollars have been spent simply because Alexandria LLC chose to lay in wait.

Alexandria LLC continued to lay in wait through the two days of evidentiary hearings to approve the sale to ACG. Without conceding that the record is insufficient to show that its interests are not sufficient to give it standing, had that issue been raised at that time, ACG could have, and would have, put on evidence to demonstrate its standing as a creditor of ASI.

III. Alexandria LLC may not contend for the first time on appeal that the Debtor's phone number, facsimile number and web address were executory contracts that were deemed abandoned because the Trustee failed to timely accept them after the conversion of ASI's bankruptcy from Chapter 11 to Chapter 7, having failed to advance that contention in the Bankruptcy Court.

Alexandria LLC's Response to this point is that it did raise the issue; not in the objection it filed, not in the supplemental objection it filed, not in any memorandum it filed in support of its objections, nor in any prayer for relief, but in its closing argument. Simply put, a few lines in a closing argument do not expand the scope of Alexandria's objection. ACG concurs with Alexandria LLC's recitation that the Bankruptcy Judge listened and did his job well. The Bankruptcy Court knew that the issue had never been

raised in the objections on which the hearing was based, and that the passing reference in a closing argument did not suddenly make it part of the case. It is for that reason, contrary to Alexandria LLC's statement in its Response that the Bankruptcy Court ruled against it, that there is no reference whatsoever to the point in the trial court's ruling, nor any reference to it in the Order entered in accordance with that ruling. The Bankruptcy Court did not rule on the issue because it was never before it.

As also noted in in ACG's Brief, and the reason why the Bankruptcy Court did not consider the few lines in closing as an issue before the court, Alexandria LLC's position throughout the bankruptcy proceedings was based on its contention that the phone numbers and web address were not, in fact, property interests, relying upon the Virginia Supreme Court's decision in *Network Solutions, Inc. v. Umbro International, Inc.*, 529 S.E. $2^d$ 80, (Va. 2000). Specifically, in paragraph 2 of its Supplemental Objection, Alexandria LLC stated that "Neither the debtor nor the trustee have ownership of or any property rights to the debtor's domain name or the debtor's telephone numbers." APP 247-249.

IV. Even if Alexandria LLC could raise the issue that the phone number, facsimile number and web address were executory contracts that were deemed abandoned because the Trustee failed to timely assume them after the conversion of ASI's bankruptcy from Chapter 11 to Chapter 7 for the first time on appeal to the District Court, it is prohibited from doing so for having taken possession of the same without leave of the Bankruptcy Court

while ASI was in Chapter 13. As a practical matter, the Chapter 7 Trustee could not have assumed any such contracts because Alexandria LLC had already transferred those contracts to itself during ASI's Chapter 13 proceedings.

Alexandria LLC never addresses this contention. It also offers no justification for the acts of the Hoofnagles in seizing the phone numbers of the Debtor while it was in a Chapter 11 proceeding. Regardless of how they are classified, Alexandria LLC was required to obtain bankruptcy court approval before it took them from the Debtor. As noted in its Brief, the reason Alexandria LLC could do so is because the two entities were effectively one and the same—the Hoofnagles controlled both and used the assets of the Debtor to benefit their new enterprise, Alexandria LLC.

V. The phone number, facsimile number and web address were property of the bankruptcy estate and thus subject to sale by the Chapter 7 Trustee. This is an issue of first impression in this Circuit.

Alexandria LLC offers nothing new in this portion of its Response. It repeats the argument it made in the District Court, relying primarily, as did the District Court did almost exclusively, on the Virginia Supreme Court's decision in *Network Solutions, Inc. v. Umbro International Inc.*, 529 S.E. 2d 80 (Va. 2000). ACG submits that is has demonstrated in its Brief that the *Network Solutions* decision is very limited as to both its holding and its scope, and simply does not stand for the proposition espoused by Alexandria LLC. It was a garnishment case which considered only the reach of Va. Code

§8.01-511; specifically, whether a domain name was a liability owed from the garnishee (the service provider) to the judgment debtor—the only interest under §8.01-511 that is subject to a garnishment summons. Moreover, as the dissent made clear, the majority was actually recognizing that a domain name held by an entity was a possessory interest—which is without a doubt an asset of the bankruptcy estate. 259 Va. 759, 774, 529 S.E.2d 80, ___ (2000).

Alexandria LLC's prediction of doom and gloom that it will be an undue burden on a business debtor to list its phone number and domain name as an asset is wildly speculative, and not a consideration in the determination of this appeal. We are not talking about an individual with multiple cell phones. Here, we are dealing with a business entity with a long history, and which has a valuable asset in its phone numbers and web address. This is readily demonstrated by the fact that Alexandria LLC was willing to pay $28,000 for those assets, inclusive of the survey files, and its fervent efforts to hang on to them through the District Court appeal and to this Court.

VI. The Bankruptcy Court was correct in ruling that the servers were not scheduled by ASI and thus were not abandoned when the case was closed and were subject to sale by the Chapter 7 Trustee.

ACG will stand on its Brief on this issue.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in its opening Brief, Alexandria Consulting Group, LLC, prays that the District Court's Order of November 7, 2013, APP 713-724, be reversed, and that the Order of the Bankruptcy Court of April 26, 2013, APP 707-712, be affirmed and reinstated. Alternatively, if this Court were to find that the issue of standing or the issue that the phone numbers and web address are the subject of executory contracts can be raised for the first time on appeal, ACG prays that the matter be remanded to the Bankruptcy Court to hear ACG's evidence and make a determination of those issues. Alexandria Consulting Group, LLC further requests that this matter be remanded to the Bankruptcy Court for a determination of a proper award of attorney's fees and costs pursuant to 11 U.S.C. 105.

Respectfully submitted,

**Alexandria Consulting Group, LLC**
*By Counsel*

**O'CONNOR & VAUGHN LLC**
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
(703) 689-2100 Telephone
(703) 471-6496 Facsimile

By ____/s/ Robert L. Vaughn, Jr.
    Robert L. Vaughn, Jr., VSB # 20633
    *Counsel for Alexandria Consulting Group, LLC*

˅18˅

## CERTIFICATE OF COMPLIANCE

In accordance with Rules 32(a)(7)(B) and (C) of the Federal Rules of Appellate Procedure, the undersigned counsel for Appellant certifies that the accompanying Brief is printed in 14 point typeface, with serifs, and, including footnotes, contains no more than 7,000 words. According to the word-processing system used to prepare the Brief, Microsoft Word, it contains 4,718 words, inclusive of the entirety of this Reply.

/s/ Robert L. Vaughn, Jr
Robert L. Vaughn, Jr.

**O'CONNOR & VAUGHN LLC**
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
(703) 689-2100 Telephone
(703) 471-6496 Facsimile

By ____ /s/ Robert L. Vaughn, Jr.
       Robert L. Vaughn, Jr., VSB # 20633
       *Counsel for Alexandria Consulting Group, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2014, the foregoing Reply Brief was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Richard G. Hall, Esq.
7369 McWhorter Place, Suite 412
Annandale, Virginia 22003

Steven Ramsdell, Esq.
Tyler, Bartl, Ramsdell & Counts, PLC
300 North Washington Street, Suite 202
Alexandria , Virginia 22314

I further certify that on May 16, 2014, eight paper copies of the Brief were filed with the Clerk of the Court by Federal Express overnight delivery.

/s/ Robert L. Vaughn, Jr
Robert L. Vaughn, Jr.